In the Matter of the ESTATE OF Ottis SMITH (Deceased).

Donna SNYDER and Arnold Ogden, Co-Personal Representatives of the Estate of Ruth M. Smith, (deceased), Petitioners-Appellants,

v.

Donald L. SMITH, Personal Representative of the Estate of Ottis Smith, (deceased); Donald L. Smith and Eldon R. Smith, Respondents-Appellees.

No. 85CA0026.

Colorado Court of Appeals, Div. II.

March 20, 1986.

Carl W. Dugan, Lakewood, for petitioners-appellants.

Paul Snyder, Castle Rock, for respondents-appellees.

STERNBERG, Judge.

Donna Snyder and Arnold Ogden, as personal representatives of the estate of Ruth M. Smith, appeal from a judgment determining the amount of elective share and exempt property allowance due Ruth's estate from the augmented estate of her husband, Ottis Smith. We affirm in part, reverse in part, and remand for further proceedings.

Ottis Smith died testate in June 1980. He was survived by his wife, Ruth, and his sons, Donald L. and Eldon R. Smith. On August 5, 1980, Ruth Smith filed a petition for an elective share, exempt property allowance, and family allowance. Ruth Smith died in December 1980. Her children from a prior marriage were substituted as petitioners in the Ottis Smith estate proceeding. The petition was contested by Donald, Eldon, and the special administrator of Ottis' probate estate, who argued

that Ruth had waived her statutory rights. The trial court ruled against petitioners; however, that judgment was reversed by this court and the cause was remanded for the resolution and allowance of Ruth's claim. *In re Estate of Smith*, 674 P.2d 972 (Colo.App.1983). After remand, judgment was rendered on Ruth's statutory claims.

The findings of the trial court consist largely of detailed arithmetical computations made pursuant to § 15–11–202, C.R.S. (1985 Cum.Supp.) (outlining how an augmented estate is to be calculated). Ruth's estate challenges these findings and the conclusions that resulted therefrom generally as legal error and specifically to the extent they involve errors of calculation. Because full replication of the statute and the findings and conclusions would do little to clarify matters, we will describe them only insofar as necessary to resolve the issues raised by the parties and will deal summarily with arithmetical errors and errors of inclusion.

Generally stated, the trial court proceeded as follows. The value of the initial probate estate was stipulated to be $5,730.31. We note that there had been substantial transfers of property immediately prior to Ottis' death to his sons. By subtraction of Ruth's claimed exempt property allowance and various administrative expenses claimed by the personal representatives, Ottis' probate estate was reduced *to a negative value.* To this "net probate estate" was added the stipulated value of augmented estate assets. Certain statutory allowances were then subtracted to reach the "net augmented estate." The fractional share percentage described in § 15–11–207(4)(b), C.R.S. (1985 Cum.Supp.) was calculated and applied to the "net augmented estate" and from this result was subtracted amounts that the court ruled had already been paid by Ottis' estate to or for the benefit of Ruth. The court then added the value of Ruth's exempt property allowance, arriving at a total due Ruth's estate of $108,825.99. Of this amount, Donald was to pay 58.1% and Eldon 41.9%.

## I.

Ruth's estate first contends that the trial court erred in assessing administrative charges against the probate estate so that it was assigned a negative value, thus improperly reducing the value of the augmented estate. We do not agree.

Section 15–11–202(1), C.R.S. (1985 Cum. Supp.) states that: "The augmented estate means *the estate* reduced by funeral and administration expenses, exempt property allowance, family allowances, and enforceable claims, to which is added the sum of the following amounts...." (emphasis supplied) In *In re Estate of Novitt*, 37 Colo.App. 524, 549 P.2d 805 (1976), it was contended that claims for family and exempt property allowances should be paid from assets includible in the augmented estate because the value of the probate estate was insufficient to pay them. This court stated that: "[T]he language of this section clearly reflects the legislative intent to establish the family allowance and exempt property allowance as items to be claimed from the probate estate, *if any,* to which are then added certain items [specified in subsections of § 15–11–202] to create the augmented estate." (emphasis supplied) This statement appears to support the position of Ruth's estate; however, to the extent that it does so, we elect not to follow *Novitt* here.

We perceive that one of the purposes of the augmented estate provisions is to allow a surviving spouse, deprived of a share in the decedent spouse's estate by *inter vivos* transfers to third parties or other means, to claim an elective share of property deemed includible in the augmented estate. To construe § 15–11–202 in accordance with the above statement from *Novitt* would mean that, in situations where a decedent spouse has by such transfers reduced his or her "probate" estate below some threshold amount, (1) the surviving spouse would not receive the full amount of statutory allowances which are strongly favored as a matter of public policy and (2) the surviving spouse would not be required to pay a *pro rata* share of

administrative expenses properly chargeable to the estate.

 Where the augmented estate provisions are triggered, we think that policy considerations should favor disbursement of all valid claims and expenses from the total assets of the augmented estate. The elective share should then be awarded from a net value. Thus, computation of a "negative" value for the "probate" estate is merely an accounting tool that would allow proper allocation of all benefits and burdens which may accrue to an estate during the probate process. This construction of the statute is consistent with the statutory language.

Here, the evidence showed that Ottis Smith transferred substantial property to his sons within one month prior to his death, creating the precise situation with which the augmented estate concept was designed to deal. Because of the lengthy litigation concerning Ruth Smith's alleged waiver of her right to an elective share, a total of $29,550.08, primarily legal and personal representative fees, was expended for, and during the course of, the defense to her petition. These amounts were thereafter claimed as expenses of administration by the personal representative of Ottis' estate. If we were to follow *Novitt*, Ruth's estate would not be able to recover the full amount of the allowances to which she would have been entitled, while Ottis' sons as sole contributors to the elective share would bear all of the administrative expenses charged to the estate. We conclude therefore that the trial court did not err in utilizing the negative value technique in valuing the estate prior to adding the value of the augmented estate assets.

 It is stipulated, however, that Ottis' initial probate estate contained only his one-half interest in a mobile home ($5,730.32) and that Ruth's estate is entitled to exempt property allowance in the amount of $7,500. In its computations, the trial court did not allow Ruth's estate to receive full credit for this allowance. Under the rule we adopt, this was error.

## II.

 It was stipulated that Ottis' transfers to persons other than the surviving spouse, *see* § 15–11–202(1)(a), C.R.S. (1985 Cum.Supp.), consisted of a savings account ($58,529) and trust assets including a bank account ($418.86), real estate ($110,000), and notes receivable ($116,857.11). Ruth's estate asserts, however, that the trial court improperly excluded from the augmented estate the value of Ruth's one-half interest in the couple's mobile home ($5,730.32) which should have been considered as a transfer to the surviving spouse. We agree. *See* § 15–11–202(1)(b), C.R.S. (1985 Cum.Supp.). Further stipulations establish that Ruth received life insurance proceeds ($1,000) and a note receivable ($2,200). The value of augmented estate assets, therefore, not including Ottis' share in the mobile home and before subtraction of any allowances or charges, is $294,465.61. *See* § 15–11–202, C.R.S. (1985 Cum.Supp.).

## III.

Ruth's estate next argues that the trial court erred in allowing certain charges to the estate as administrative expenses. These include: attorney fees ($11,500); "other attorney" and CPA fees ($2,029.81); personal representative fees paid to Eldon Smith ($1,600); personal representative fees paid to Donald Smith ($4,800); and general administrative expenses of $2,500. (Other charges allowed as administrative expenses were maintenance costs for rental property included in the trust ($99.14), funeral and medical expenses for Ottis ($3,314.25), and special administrator fees of $1,706.88). We consider each of the contested items separately.

## A.

Ruth's estate first contends that at least some of the amounts allowed for attorney and CPA fees, which total $13,529.81, are improper because they were incurred by Donald and Eldon as personal costs of defending Ruth's claim to an elective share

and not as costs of the estate administration. We agree.

The trial court allowed these charges based on its conclusion that the special administrator, and Donald and Eldon as personal representatives, were "duty bound" to carry out the desires of the deceased, and that this duty required them to defend against Ruth's claim because had they "merely honored the claims of Ruth" they would have been subject to suit. The elective share provision of the probate code, however, implement a legislative policy decision to thwart the express or apparent desires of a deceased in circumstances such as those before us here. Neither Donald nor Eldon opposed Ruth's claim in the capacity of personal representative; rather, their opposition was as beneficiaries of the pre-death gifts. Finally, we see no basis in law or in practical logic for the conclusion that defense of Ruth's claim was a cost of administration that in any way could have benefitted Ottis' estate. *See In re Estate of Painter*, 671 P.2d 1331 (Colo.App.1983) (Fees collectable for expenses in estate litigation under § 15–12–710, C.R.S., must be related to services incurred in an attempt to benefit the estate).

Litigation involving Ruth's claim resolved the issue of whether Ruth had waived her rights to a statutory share. If she had not, the augmented estate provisions would be triggered and Donald and Eldon would be required, as contributors to the augmented estate, to surrender considerable property to Ruth. The litigation, then, was essentially a contest between potential beneficiaries of the augmented estate to establish rights in property. And, as such, the duty of the special administrator was not to contest Ruth's claim, but rather to "preserve, protect, and defend [Ottis'] estate against dissipation until such controversies ... [should] be determined and then to distribute the assets in accordance with the ... direction of the court." *Risbry v. Swan*, 124 Colo. 567, 239 P.2d 600 (1951). "It is generally recognized that executors and administrators acting in their representative capacities are indiffer-

ent persons as between the real parties in interest and consequently cannot litigate the conflicting claims of heirs or legatees at the expense of the estate." *In re Kessler's Estate*, 32 Cal.2d 367, 196 P.2d 559 (Cal.1948), quoted with approval in *Risbry v. Swan, supra.*

We hold that allowance of all of these charges was error as a matter of law. Therefore, on remand the trial court is to determine what portion thereof is allocable to defense, including appeal, of this claim. These expenses are the personal responsibility of Donald and Eldon Smith, and are not to be charged as costs of estate administration. We further hold that, as a matter of equity, because Ruth's rights in assets includible in the augmented estate arose as of the death of Ottis, *see Logan v. Logan*, 11 Colo. 44, 17 P. 99 (1888), any attorney or CPA fees properly incurred in administering those assets after that date should be charged to the estate.

**B.**

Ruth next contends that Donald should not be reimbursed for acts performed for the benefit of the estate prior to the date that his letters of appointment as personal representative were issued, and that Eldon should receive no reimbursement because he renounced his right to serve as co-personal representative.

We agree as to Eldon on the basis stated because the record reflects that he did indeed renounce his appointment and because the trial court's order states that the amount allowed was allowed "for [his] work as personal representative" rather than as an agent or employee of the estate pursuant to § 15–12–721, C.R.S. However, we disagree as to Donald. Even though his letters were not issued until October 1982, Donald qualified as personal representative in April 1982. "The powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter." Section 15–12–701, C.R.S. Because the right to compensation

is properly based on acts performed for the benefit of the estate, the trial court did not abuse its discretion in allowing compensation to Donald for work performed before his official appointment. *See Chase v. Lathrop,* 74 Colo. 559, 223 P. 54 (1924) (compensation for services of executor for benefit of estate is within discretion of court and will not be disturbed absent abuse of discretion).

### C.

Ruth's estate next contends that the trial court abused its discretion in allowing $2,500 as valid general administrative expenses. We disagree.

The weight and probative value of evidence is committed to the sound discretion of the trial court. *See Teac Corp. v. Bauer,* 678 P.2d 3 (Colo.App.1984). The judgment of a trial court is presumed to be correct and the burden of showing error is on the party asserting it; the party asserting error must present a record disclosing that error. *See In re Application of Northwestern Mutual Life Insurance Co.,* 703 P.2d 1314 (Colo.App.1985); *Alessi v. Hogue,* 689 P.2d 649 (Colo.App.1984). Where no transcript of testimony is before this court, we must presume that the findings of fact of the trial court were supported by the evidence. *See White v. Jackson,* 41 Colo.App. 433, 586 P.2d 243 (1978).

■ Here, general administrative expenses were claimed in the amount of $7,050. The trial court stated its dissatisfaction with the supporting documentation offered by the personal representative, but allowed $2,500 as valid expenses. While the record before us includes documentary evidence offered to substantiate this and other claims for administrative expenses, it does not include a transcript of testimony presented to the trial court. In these circumstances, we must presume that the trial court's findings are correct and supported by testimony before it. We conclude that the trial court did not err in allowing this charge.

### IV.

It appears from the abbreviated record before us that at trial Ruth's estate sought compensation for increases accruing to the value of estate property from the date of Ottis' death. The trial court provided such compensation in the form of an award of interest on the total amount determined to be due Ruth's estate as elective share and exempt property allowance. Interest was to accrue beginning May 12, 1983, the date of the decision of this court reversing the trial court's ruling that Ruth had waived her statutory rights.

On appeal, Ruth's estate agrees that an award of interest is proper, but argues that the trial court erred because, under *Logan v. Logan, supra* and § 5–12–102, C.R.S. (1985 Cum.Supp.), interest should have run from the date of Ottis Smith's death and should have been compounded annually. Ottis' estate, on the other hand, contends that the trial court's ruling should be upheld, relying on *Heller v. First National Bank,* 657 P.2d 992 (Colo.App.1982), in which we stated:

"The award of interest in a breach of trust action is wholly independent of statute. Whether interest will be allowed, at what rate, and from what date, is wholly in the discretion of the trial court. And, whether simple or compound interest shall be allowed is a question of discretion and fact in each case."

As indicated by the authorities cited in *Heller,* this language addresses the equitable powers of a court acting independently of statute or contract and, thus, concerns moratory interest.

■ As stated above, we were not provided with a transcript of testimony presented to the trial court. The court's order does not include any findings that would justify the conclusion on review that its compensatory award was predicated on grounds provided in the interest statute. *See* § 5–12–102, C.R.S. (1985 Cum.Supp.) (interest available on money or property wrongfully withheld and on money due on an instrument of writing or an accounting). Rather, it is apparent that the award was one of moratory interest, based upon the equitable powers of the court. This being the case, we conclude that the court did not

abuse its discretion in awarding eight percent interest from May 12, 1983, on the total amount due Ruth's estate.

## V.

Ruth's estate next argues that the trial court erred in adjusting the elective share by subtracting certain amounts as a post-computation setoff. These amounts included charges for mobile home maintenance, and for ambulance, home care, medical, and insurance services rendered to Ruth ($10,-260.58), all of which were paid from funds included in the augmented estate. Also included were charges for life insurance proceeds ($1,000) and a note receivable ($2,200) which were paid from the augmented estate to Ruth's estate. Ruth's estate contends that these expenses were not documented by the personal representative and should not be allowed. It further contends that, if valid, the trial court improperly disposed of these amounts pursuant to § 15–11–202. We agree as to this second argument.

In considering these charges, the trial court concluded that sufficient documentation was before it, and, based on the record submitted, we find no error in its having allowed these charges. *See Teac Corp. v. Bauer, supra.* However, the court effectively double-charged Ruth's estate by including these values both as an element of its fractional share computations, *see* § 15–11–207, C.R.S. (1985 Cum. Supp.) and as a post-computation setoff from the elective share for values already paid to Ruth's estate. We conclude that the trial court erred in its treatment of these amounts under the probate code.

Section 15–11–207 states that a surviving spouse is entitled to a fractional share of the augmented estate "other than property otherwise passing to the surviving spouse." "Property otherwise passing to the surviving spouse" means property includible in the augmented estate "which passes or has passed to the surviving spouse by testate or intestate succession or by *other means* ...." Section 15–11–207(1), C.R.S. (1985 Cum.Supp.) (emphasis supplied). The statute then goes on to describe how the fractional share is to be computed.

We conclude that these charges represent property otherwise passing to the surviving spouse and that the trial court properly included these amounts, and the value of Ruth's joint tenancy in the mobile home, in calculating the fractional value. However, the trial court erred in subtracting $13,460.58 (representing "property otherwise passing" minus the value of the joint tenancy) from the calculated value of the elective share. Pursuant to § 15–11–207(2), the proper procedure is to begin by calculating the value of the augmented estate. The value for "property otherwise passing" is then subtracted and, finally, the fractional value is applied to this result to obtain the elective share. We find no basis in the probate code for further adjustments to the elective share.

Other contentions raised by the parties are without merit.

The judgment is affirmed in part, reversed in part, and the cause is remanded. On remand the trial court shall proceed as follows: The stipulated value of the initial probate estate should be adjusted by subtraction of Ruth's claimed exempt property allowance and administrative expenses allowable in accordance with this opinion. To this amount should be added the stipulated value of augmented estate assets. Statutory allowances to Donald and Eldon should then be subtracted to reach a "net augmented estate." The fractional share percentage should be calculated and applied to the value represented by subtracting "property otherwise passing to the surviving spouse" from the "net augmented estate." This will result in a determination of the amount due Ruth's estate as her elective share. This result must be increased by addition of the exempt property allowance in order to reach the total amount due Ruth's estate. Finally, interest must be calculated on this total at eight percent per annum from May 12, 1983.

SMITH and VAN CISE, JJ., concur.