In the Matter of the ESTATE OF Mary Lu GRASSESCHI.

Thomas A. GRASSESCHI,
Petitioner–Appellee,

v.

Robert R. SMILEY, as Personal Representative of the Estate of Mary Lu Grasseschi, Deceased, Respondent–Appellant.

No. 87CA1058.

Colorado Court of Appeals,
Div. III.

May 4, 1989.

Rehearing Denied June 15, 1989.

Mosely, Wells, Johnson & Ruttum, P.C., James H. Mosley, Paul T. Ruttum and Neil L. McClain, Denver, for petitioner-appellee.

James D. Beatty, Fort Collins, for respondent-appellant.

FISCHBACH, Judge.

Robert R. Smiley—personal representative of the estate of decedent, Mary Lou Grasseschi, and trustee of an inter vivos trust decedent established (trustee)—appeals a probate order concerning an action taken by Thomas A. Grasseschi (Grasseschi), the decedent's surviving spouse. In that order, the court ruled that Grasseschi had effectively renounced his interest in the trust and, thus, was entitled to have all of the trust assets included in the augmented estate for purposes of calculating his elective share without a deduction for his otherwise beneficial interest in the trust. We affirm.

Three months before her death, the decedent created a revocable inter vivos trust into which she transferred most of her property. At the same time she executed a will which specified that her residuary estate would pour over into the trust. The trust provided that the monthly net income from trust assets would be paid to Grasseschi and that the principal remaining upon his death would pass to a trust for the decedent's children.

Decedent died on July 25, 1984, and her will was lodged with the district court on November 28, 1984. On February 13, 1986, her will was admitted to formal probate. On June 4, 1985, and again on April 8, 1986, Grasseschi filed a petition to take an elective share of his wife's estate.

The dispute between the trustee and Grasseschi concerns the determination of Grasseschi's elective share of decedent's "augmented estate," pursuant to § 15–11–207, C.R.S. (1987 Repl.Vol. 6B). Section 15–11–207(1), C.R.S. (1981 Repl.Vol. 6B) provides that in computing the augmented estate, "property otherwise passing

to the surviving spouse" does not include a beneficial interest in a trust created by the decedent "unless the surviving spouse chooses to accept and not renounce such beneficial interest." To the extent that the surviving spouse has "property otherwise passing" to him from the decedent, his election to take a portion of the augmented estate will reap him a smaller benefit. *See* § 15–11–207(2) & (3), C.R.S. (1987 Repl.Vol. 6B); *In re Estate of Smith,* 718 P.2d 1069 (Colo.App.1986).

Here, Grasseschi argued to the trial court that, pursuant to this section, he had chosen not to accept, but rather to renounce, his beneficial interest in the trust. The trial court found that a surviving spouse may renounce his interest under the inter vivos trust "in any reasonable manner and within a reasonable time," and, after an evidentiary hearing, ruled that Grasseschi had effectively renounced his interest in the trust for the purpose of calculating his elective share of the augmented estate.

The trustee contends that the trial court erred in so ruling. He argues that because § 15–11–207 provides no specific procedure for renouncing a trust, the procedures detailed in § 15–11–801, C.R.S. (1987 Repl. Vol. 6B) and/or § 15–1–901, C.R.S. (1987 Repl.Vol. 6B) must be followed. Because Grasseschi admittedly did not follow either of these procedures, the trustee concludes, he did not effectively renounce the trust. We disagree.

### I.

■ The trustee first contends that the trial court erred in ruling that Grasseschi was not required to follow the procedures set forth in § 15–11–801 to renounce his interest in the trust. We, however, agree with the trial court that because the trust in question was an inter vivos transfer, this section, which concerns the renunciation of only testamentary or intestate transfers, does not apply. *See* § 15–11–801(1), C.R.S. (1987 Repl.Vol. 6B); 1 R. Wellman, *Uniform Probate Code Practice Manual* 72 (2d ed. 1977). While the provision in the will that any residuary assets in decedent's estate pour over into the trust creates a

testamentary transfer to the extent of the pour-over, the instant dispute concerns the corpus of the trust, not the minimal pour-over. Thus, we need not decide whether § 15–11–801 would be the exclusive means of renouncing the pour-over.

### II.

■ The trustee next asserts that if the trust is classified as an inter vivos transfer and § 15–11–801 does not apply, the trial court erred in ruling that Grasseschi was not required to follow the procedures outlined in § 15–1–901 for renouncing nontestamentary transfers. Grasseschi, on the other hand, maintains that the ruling was correct because § 15–1–901 does not provide the exclusive means of renouncing nontestamentary transfers, and, because its means conflict with both the wording and purpose of § 15–11–207, the latter statute must control. We agree with Grasseschi and the trial court.

In relevant part, § 15–1–901 provides as follows: "(1) A person ... who is a grantee, donee, ... beneficiary under a nontestamentary instrument or contract ... may disclaim in whole or in part the right of succession or transfer to him of any property, real or personal, or interest therein by delivering or filing a written disclaimer within the time and at the place as provided in section 15–1–902." Section 15–1–902, C.R.S. (1987 Repl.Vol. 6B), in turn, requires that any disclaimer pursuant to the statute be made within nine months after certain events. With respect to a future interest, the disclaimer must be within nine months of the event causing the beneficiary's interest to become indefeasibly fixed in both quality and quantity, in this case, the decedent's death.

The statute sets forth a procedure for renouncing interests in nontestamentary instruments generally. It is a residuary statute and does not abridge the specific right to renounce an interest under any other statute. Section 15–1–905, C.R.S. (1987 Repl.Vol. 6B). Because the statute is general and procedural, it must yield to conflicting special legislation. *See Air Pollution Control Commission v. District*

*Court*, 193 Colo. 146, 563 P.2d 351 (1977); *Weather Engineering & Manufacturing, Inc. v. Pinon Springs Condominiums, Inc.*, 192 Colo. 495, 563 P.2d 346 (1977). Section 15–11–207 concerns the special circumstance of determining the augmented estate, so its provisions regarding renunciation prevail in any conflict with § 15–1–901.

Section 15–11–207(1), C.R.S. (1987 Repl. Vol. 6B) provides as follows:

"For the purposes of this section, 'property otherwise passing to the surviving spouse' means property which is part of the augmented estate which passes or has passed to the surviving spouse by testate or intestate succession or other means, including property described in section 15–11–202(1)(b) but excluding any beneficial interest of the surviving spouse in a trust created by the decedent, unless the surviving spouse chooses to accept and not renounce such beneficial interest...."

When interpreting a statute, we are required to ascertain the legislative intent and to give effect to every word and phrase of the enactment. *Arellano v. Director, Division of Labor*, 42 Colo. App. 149, 590 P.2d 987 (1979). As correctly argued by the trustee, the section does not elaborate on the means of renunciation. As correctly stated by the trial court, the section does not incorporate the procedures of any other statutory section. However, the section does provide, in the present tense, that any interest of the surviving spouse in a trust created by the decedent is excluded from consideration as "property otherwise passing ... unless the surviving spouse chooses to accept and not renounce such beneficial interest." Our task is to seek a means of giving effect to this phrase in harmony with the legislative purpose of the statute as a whole.

The legislative purpose in enacting the concept of the augmented estate, §§ 15–11–201 through 15–11–207, C.R.S. (1987 Repl.Vol. 6B), was twofold: (1) to "attempt to prevent the owner of wealth from making arrangements which transmit his property to others by means other than probate deliberately to defeat the right of the surviving spouse to a share ... (2) to insure that the spouse is adequately provided for." Colorado Legislative Council, Report # 194, *The Colorado Probate Code* 24 (December 1972). In contrast to the Uniform Probate Code provisions concerning the augmented estate, which do not allow the surviving spouse to opt out of his beneficial interest in a trust established by the decedent, and which describe their second purpose as to prevent the surviving spouse from electing a share of the probate estate when the spouse has received a fair share of the total wealth of the decedent through other means, Uniform Probate Code § 2–202, 8 Uniform Laws Annot. 77–78 (1983) (comment), the sole purpose of the Colorado provisions is to protect the surviving spouse.

In furthering this purpose, § 15–11–207(1) in particular was intended to be a significant modification of the Uniform Probate Code. The Uniform Probate Code language on renunciation was changed specifically to give "the spouse the option as to whether his interest in a trust created by the decedent would be included as part of the elective share." Colorado Legislative Council Report, *supra* at 28.

The augmented estate statute does not specify any time constraints within which the surviving spouse must exercise this option concerning his trust interest. However, the statute does provide that the surviving spouse must file for an elective share within six months after first publication of notice to creditors or within one year after death, or, if the will is admitted to probate, within six months after such admission. Section 15–11–205, C.R.S. (1987 Repl.Vol. 6B). These provisions give the surviving spouse time to acquire knowledge of claims against the estate and, thus, allow him or her to make an informed decision on whether to take an elective share. The surviving spouse is afforded additional flexibility in that a demand for an elective share may be withdrawn at any time before the court's determination be-

comes final. Section 15–11–205(3), C.R.S. (1987 Repl.Vol. 6B).

The present tense language of § 15–11–207, the purpose of the statute to benefit the surviving spouse, and the embodiment of that purpose in time requirements which give the surviving spouse considerable flexibility in choosing to take an elective share, conflict with the strict requirements of § 15–1–901. Under 15–1–901, a surviving spouse would never have more than 9 months after a triggering event in which to renounce his or her trust interest, no matter when such spouse is able to find out how beneficial renunciation would be in the context of an election for a share of the augmented estate. If a surviving spouse's interest becomes indefeasibly fixed 10 years before the decedent's death, under § 15–1–901 that spouse would be required to renounce it 9¼ years before the decedent's death. Thus, the surviving spouse would not be able to choose to renounce the interest upon the decedent's death. This is contrary to the text and purpose of § 15–11–207.

We conclude that the general procedure of § 15–1–901 for renouncing nontestamentary transfers does not apply to a surviving spouse's renunciation of his or her beneficial interest in a trust created by the decedent in the context of an augmented estate election.

### III.

■ The trial court held that renunciation of the trust interest is effective if made in a reasonable manner and within a reasonable time. We disagree that "a reasonable time" is the appropriate time constraint.

As we stated in Part II of this opinion, § 15–11–205 sets forth the time limits within which the surviving spouse must elect to take an augmented share of the estate. Because the renunciation described in § 15–11–207 is inextricably intertwined with the entire election procedure, we conclude that the time constraints enunciated in § 15–11–205 must also apply to it. This

modification of the trial court's reasoning does not affect the result in the instant case because the record indicates that Grasseschi did, in fact, comply with the deadlines in § 15–11–205 in renouncing his interest in the trust.

### IV.

■ The trustee finally contends that, regardless of the timing of any attempted renunciation, there was insufficient evidence to show that Grasseschi did renounce and did not accept his beneficial interest in the trust. Again, we disagree.

The evidence tending to show rejection of the trust interest includes: (1) testimony that Grasseschi repeatedly advised the trustee of his intention to reject the trust and take an elective share of the estate; (2) a letter by Grasseschi to the trustee stating that he had deposited the first trust benefits check in a separate bank account and that his endorsement of the check was not to be construed as an acceptance of any benefits from the trust or as a waiver of his right to an elective share; and (3) a Motion for Determination of Amount of Elective Share, received by the court on April 8, 1986, in which Grasseschi included the entire trust as a "transfer under which the decedent retained at the time of [her] death the possession or enjoyment of, or right to income from, the property" pursuant to § 15–11–202(1)(a)(I)(A), C.R.S (1987 Repl.Vol. 6B), and allowed no deduction for his beneficial interest as "property otherwise passing."

The only evidence tending to show that Grasseschi accepted the trust was testimony that he expressed no displeasure with the trust at the time it was conceived to anyone other than his children, and that he did not reject the trust within nine months of his wife's death even though he may have thought such timeliness necessary.

Because the trial court's finding that Grasseschi effectively renounced his interest in the trust was based on a choice between conflicting evidence, it will not be disturbed on review. *Chew v. Internation-*

*al Society for Krishna Consciousness,* 738 P.2d 57 (Colo.App.1987).

Order affirmed.

NEY and ENOCH *, JJ., concur.