25CA0331 Matter of REH 05-21-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0331
Kit Carson County District Court No. 21PR30024
Honorable Justin B. Haenlein, Judge

In the Matter of R.E.H., Ward,

Melissa Carlson,

Appellant,

v.

R.E.H.; Theresa Lambert; and Felicia Hielscher,

Appellees.

ORDERS AFFIRMED

Division III
Opinion by JUDGE KUHN
Dunn and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 21, 2026

Melissa Carlson, Pro Se

Randa Davis-Tice, Guardian Ad Litem, for R.E.H.

Theresa Lambert, Pro Se

Felicia Hielscher, Pro Se

¶ 1     In this guardianship case, former guardian, Melissa Carlson, appeals the district court's orders denying her motion to relocate the ward, R.E.H.; removing her as guardian; and establishing a schedule for visits with R.E.H.  We affirm.

## I.     Background

¶ 2     R.E.H. is an at-risk adult with a developmental disability.  For more than thirty years, R.E.H. has been a full-time resident of an assisted living facility.

¶ 3     In July 2021, Carlson, who is R.E.H.'s sister, filed a petition to be appointed as R.E.H.'s emergency guardian.  The district court granted the motion to ensure that R.E.H.'s "best interests, safety, and medical issues [were] being advanced."  Felicia Hielscher,[1] who is R.E.H.'s half-sister, later objected to Carlson's petition and claimed that Carlson provided the court with "information that was not true about the relationship between Felicia and [R.E.H.]" to support Carlson's appointment as emergency guardian.

---

[1] To avoid confusion between those who share a last name, we will refer to Felicia Hielscher by her first name.  We do not mean any disrespect by doing so.

1

¶ 4     The district court scheduled a hearing to determine R.E.H.'s guardianship for November 8, 2021 — the date Carlson's emergency guardianship expired.

¶ 5     At that hearing, Carlson alleged that Felicia mistreated R.E.H. and asked that he be "protected from her."  After considering several witnesses' testimony, the district court appointed Carlson as R.E.H.'s permanent guardian.

¶ 6     In 2024, Carlson filed a motion to relocate R.E.H. to Grand Junction.  Carlson claimed that, if he lived in Grand Junction, R.E.H. would be close to family and "would have a nicer and cleaner living environment" than he had at the assisted living facility.  The assisted living facility objected to Carlson's motion as an interested party.  It claimed that R.E.H. was a "beloved member of the community," and that he was "unfairly caught in the middle of a family dispute between two sisters who are fighting for control and not always focused on [R.E.H.] and [his] best interest."

¶ 7     Felicia and Theresa Lambert, who is R.E.H.'s mother, also objected to Carlson's motion.  They claimed that R.E.H. "has come very far" at the assisted living facility and that Burlington is his "safe haven" and a place that he has called home for thirty-six

years. Felicia then filed a motion to appoint a guardian ad litem for R.E.H., and Lambert filed a motion to set a visitation schedule. Carlson objected to both motions.

¶ 8    The court ultimately appointed Randa Davis-Tice, an attorney in Lamar, as R.E.H.'s guardian ad litem. The district court scheduled a hearing to address Carlson's motion to relocate and Lambert's motion to set visitation.

¶ 9    Before the hearing, Felicia and Lambert filed an emergency motion to remove Carlson as R.E.H.'s guardian. The district court scheduled that motion to be heard alongside the other two motions at the hearing.

¶ 10    After the hearing on all three motions, the district court issued an order on October 17, 2024. The court denied Carlson's motion to relocate R.E.H. to Grand Junction. The court explained that, while it had "significant concerns regarding [R.E.H.'s] living situation, [it could not] overlook the mental strain that a move would bring [R.E.H.]." The district court also stated that it was "concerned with the interaction [and animosity] between all three family members." The court therefore ruled that it was in R.E.H.'s best interests to appoint "a successor guardian [who] is an

3

independent party with the ability to mediate disputes between the parties." The court appointed Carla Foth, a longtime friend of R.E.H., as successor guardian.

¶ 11 Finally, the district court ruled that "[b]ecause of the animosity between the parties[,] . . . a set visitation schedule is appropriate," and on January 30, 2025, the district court set a visitation plan for the parties.

¶ 12 Carlson now appeals.

## II. Analysis

¶ 13 Carlson contends that the district court's decisions were "clearly unfair, unreasonable[,] and not in the best interest of [R.E.H.]." She asks this court to (1) permit R.E.H. to relocate to Grand Junction; (2) remove Foth as R.E.H.'s guardian and appoint Carlson and Paula Mae Hielscher, another one of R.E.H.'s sisters, as his joint guardians; and (3) reverse the district court's visitation

order.[2]  Davis-Tice, Felicia, and Lambert counter that we lack jurisdiction to hear this case.  They also ask us to impose sanctions against Carlson for not abiding by the Colorado Appellate Rules and for failing to serve her opening brief on all the other parties.  We address the jurisdictional contention first, then we consider Carlson's contentions in turn, and finally, we address sanctions.

## A.     Jurisdiction

¶ 14     Davis-Tice, Felicia, and Lambert contend that Carlson's notice of appeal was untimely, and, therefore, we lack jurisdiction to hear this appeal.  We disagree.

¶ 15     A notice of appeal must be filed with the appellate court "within [forty-nine] days after entry of [a] . . . [final] order being appealed."  C.A.R. 4(a)(1).  Here, the court entered its first order on October 17, 2024.  In that order, the district court denied Carlson's

---

[2] Carlson also summarily alleges that the district court judge was biased — specifically, that he had "close friendships" with certain parties involved in the case, he was temporarily suspended after he entered the orders in the case, and he later resigned from office.  However, this claim is underdeveloped.  Carlson does not cite to the record or case law to support her argument.  Thus, we will not address this claim.  *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007) (declining to address "underdeveloped arguments").

motion to relocate R.E.H. and granted Felicia and Lambert's motion to remove Carlson as guardian and Lambert's motion to set a visitation schedule. The court declined to set the visitation schedule "without the involvement of the new guardian," however. Instead, it instructed the parties to work with the new guardian and submit a visitation schedule for the court's approval.

¶ 16 The court then issued its second order on January 30, 2025, which fully resolved the issues in these motions and set a visitation schedule. Carlson filed her notice of appeal on February 21, 2025, twenty-two days after the court entered the January 30 order.

¶ 17 After receiving the notice of appeal, this court issued an order to show cause directed to this issue. A motions division discharged the show cause order and accepted the notice of appeal as timely filed after reviewing Carlson's response. Although we are not bound by the motions division's decision, *see Chavez v. Chavez*, 2020 COA 70, ¶ 13, given the facts we detail above, we see no reason to revisit its decision here.

B. Applicable Law and Standard of Review

¶ 18 The Colorado Probate Code grants district courts broad authority "to make orders, judgments, and decrees and take all

6

other action necessary and proper to administer justice in the matters which come before it." § 15-10-302(2), C.R.S. 2025. This includes the court's power under section 15-14-315(1)(b), C.R.S. 2025, to limit a guardian's power to establish a ward's "place of custodial dwelling."

¶ 19     A court can also remove a guardian "for cause at any time." § 15-10-503(3), C.R.S. 2025; *see* § 15-14-318(4), C.R.S. 2025. One basis for "removal of a [guardian] exists when . . . [r]emoval would be in the best interests of the [guardianship]." § 15-10-503(3)(c)(I); *see also* § 15-10-201(19), C.R.S. 2025 (defining "fiduciary" to include a guardian); § 15-10-501(2)(b), C.R.S. 2025 (defining "estate" to include a guardianship).

¶ 20     The court can also set a visitation schedule under section 15-10-302(2), which authorizes it to make any "necessary and proper" orders to administer justice in cases filed under the Colorado Probate Code.

¶ 21     We review for an abuse of discretion a district court's exercise of its broad powers related to the interests of a protected person. *See Arguello v. Balsick*, 2019 COA 20M, ¶ 13 ("[W]e review a district court's appointment of a guardian for an abuse of discretion."); *see*

7

*also Sweeney v. Summers*, 571 P.2d 1067, 1070 (Colo. 1977) ("[T]he [district] court has a broad discretion in all matters relating to protected persons . . . ."). A court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair, or if the court misconstrues or misapplies the law. *Arguello*, ¶ 13. "We review a court's factual findings . . . for clear error. A court's factual findings are clearly erroneous only if there is no support for them in the record." *Van Gundy v. Van Gundy*, 2012 COA 194, ¶ 12 (citations omitted).

¶ 22     Although Carlson, Felicia, and Lambert are all pro se, that status "doesn't affect our analysis. . . . [P]ro se parties must comply with procedural rules to the same extent as parties represented by attorneys." *Adams v. Sagee*, 2017 COA 133, ¶ 10. We broadly construe pro se parties' filings "to ensure that they are not denied review of important issues because of their inability to articulate their argument like a lawyer." *Johnson v. McGrath*, 2024 COA 5, ¶ 10 (quoting *Jones v. Williams*, 2019 CO 61, ¶ 5). "It is not this court's role, however, to rewrite a pro se litigant's [briefs]. Nor may we act as an advocate for a pro se litigant." *Id.*

## C.    Relocation

¶ 23    Carlson contends that the district court erred by denying her motion to relocate R.E.H. to Grand Junction.  She also argues that although the court cited section 15-14-315 as the statute governing her request to relocate R.E.H., that statute does not apply because she did not seek to move R.E.H. out of state.

¶ 24    As Carlson points out, the October 17 order states that "[p]ursuant to [section 15-14-315], the [c]ourt has the authority to authorize the relocation of the ward."  Section 15-14-315(1)(b) states that a guardian can only "establish or move the ward's place of dwelling outside this state upon express *authorization* of the court."  (Emphasis added.)  It is understandable that Carlson may be confused about the scope of the court's authority given the use of the word "authorize" in the October 17 order and in section 15-14-315(1)(b).

¶ 25    However, section 15-14-315 outlines a guardian's general powers.  One of these powers is "establish[ing] the ward's place of custodial dwelling."  § 15-14-315(1)(b).  And it's true that a guardian can "only establish or move the ward's place of dwelling outside this state upon express authorization of the court."  *Id.*  But

this is a limitation on the guardian's authority, not the court's. And the guardian's authority to "establish the ward's place of custodial dwelling" — along with all other guardianship powers — may be "otherwise limited by the court." § 15-14-315(1). Accordingly, the court had the authority to place limits on Carlson's power to relocate R.E.H.

¶ 26 As to whether the district court abused its discretion when it denied Carlson's motion to relocate, we discern no error. In determining that it was in R.E.H.'s best interests to remain in Burlington, the district court considered and weighed the testimony about R.E.H.'s current living situation against the effect of relocating R.E.H. to a new community. The court articulated its significant concerns with the treatment that R.E.H. had received at his current assisted living facility. For example, the court cited a "number of incidents where fecal matter . . . [was] found either on [R.E.H.'s] clothing or on other furniture in [R.E.H.'s] home. There have also been instances where the cleanliness of [R.E.H. himself, his] room[,] and surrounding area [were] of concern." However, the court was also concerned about the "mental strain" that a move to Grand Junction would have on R.E.H. Not only had R.E.H. resided

10

at his current assisted living facility for thirty-six years, but his family, his guardian and friend Foth, and his community were in Burlington.  The court also found Davis-Tice credible when she testified that R.E.H. wanted to remain in Burlington.

¶ 27    Carlson also asserts that the court ignored testimony from her and one of R.E.H.'s caseworkers at the October 15, 2024, hearing regarding the relocation, guardianship, and visitation issues.  But Carlson didn't provide a transcript of that hearing.  The court reporter's affidavit reveals that the electronic recording of those proceedings was not usable.  And Carlson did not attempt to reconstruct the missing record.  *See* C.A.R. 10(e).

¶ 28    In the absence of a transcript, we must presume that the district court's findings are supported by the record.  *In re Estate of Smith*, 718 P.2d 1069, 1074 (Colo. App. 1986) ("Where no transcript of testimony is before this court, we must presume that the findings of . . . the [district] court were supported by the evidence.").  "A party cannot overcome a deficiency in the record by statements in the briefs."  *McCall v. Meyers*, 94 P.3d 1271, 1272 (Colo. App. 2004).  And to the extent that Carlson takes exception with the court's credibility determinations or how it weighed conflicting

11

evidence, the resolution of those matters was within the province of the district court as the fact finder. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23.

¶ 29   Because the district court carefully weighed the evidence for and against relocating R.E.H., and we must presume that the transcript would support the court's factual findings, we discern no error in the court's decision to deny the motion to relocate.

## D.   Guardian

¶ 30   Carlson also contends that the court erred by removing her as guardian because she took her responsibilities as R.E.H.'s guardian seriously, maintained consistent contact with R.E.H., and never acted against R.E.H.'s best interests.

¶ 31   Under section 15-14-318, a court may remove a guardian at any time for cause. Here, the court concluded that it was in R.E.H.'s best interests to remove Carlson as guardian and to appoint a successor guardian. Specifically, the court concluded that it would be in R.E.H.'s best interests "to appoint a successor guardian [who] is an independent party with the ability to mediate disputes between the parties and [who] can limit interactions between the parties as much as possible."

¶ 32     Underlying the court's conclusion was its finding — based on the parties' behavior at the hearing "as well as previously" — that "there is significant animosity between the parties." The court noted that the operator of the proposed host home in Grand Junction testified that "[e]veryone in the room s[aw] [R.E.H.] as a tool," and the court found "that all three family member[s'] interactions are impacted to a certain extent by their desire to hurt the other parties."

¶ 33     The record supports the court's finding that previous court proceedings revealed significant animosity among the parties. Testimony at the original guardianship hearing revealed that Carlson and Felicia have a long history of conflict: Carlson admitted at that hearing that the two had a rocky relationship. And Felicia claimed that the sisters' relationship "went south" when they were younger, and since then, Carlson had fabricated stories about her. Additionally, in Carlson's opening brief, she claims that during a "routine phone call," Felicia said she hated Carlson and "want[ed] nothing more to do with [her]." Again, we must presume that the transcript of the relocation, guardianship, and visitation hearing

13

would have supported the court's findings with respect to this claim, as well. *See In re Estate of Smith*, 718 P.2d at 1074.

¶ 34     We therefore conclude that the district court's findings are not clearly erroneous. And given these findings, we perceive no abuse of discretion in the order removing Carlson as guardian and appointing an independent successor guardian.

## E.     Visitation Plan

¶ 35     Lastly, Carlson contends that the district court erred by ordering a visitation plan. She specifically argues that R.E.H. should be able to choose who he spends his time with, that "[t]he parties [who] have chose[n] to spend little to no time with [R.E.H.] g[o]t awarded the most visitation time," and that the visitation plan limited the time that R.E.H.'s family members in Grand Junction — three sisters, a brother-in-law, a nephew, and a niece — could spend with R.E.H., given that the drive from Burlington to Grand Junction is seven hours. Again, we discern no error.

¶ 36     According to the district court, it implemented the visitation schedule to protect R.E.H.'s "health, welfare, emotional wellbeing, and happiness." The court explained that the plan was not intended to "restrict contact between [R.E.H.] and his family, . . .

14

[but was instead] meant to provide a long-term structure on which [R.E.H.] [could] rely." The schedule listed Carlson as one party and Felicia and Lambert as the other party. For holidays like Easter, Thanksgiving, and Christmas, the court evenly split the parties' visitation rights, with each party having visitation on such dates every other year. The parties had the same visitation schedule on R.E.H.'s birthday. However, only Carlson received visitation time on Memorial Day and Labor Day. And only Felicia and Lambert received visitation time on Independence Day (which also falls near Lambert's birthday), Mother's Day, and Logan County Fair days.

¶ 37 The court recognized that no party would be "fully satisfied" with the schedule. The court also noted that the time allocated to each party was not mandatory but, rather, "*available* time with [R.E.H.]" If the parties wished to spend time with R.E.H. outside of the plan "during daytime hours, and within the county of Kit Carson, [the assisted living facility] [was] to be contacted no less than [six] hours in advance to determine R.E.H.'s availability."

¶ 38 We perceive no abuse of discretion in the district court's visitation schedule. *See Sweeney*, 571 P.2d at 1070. The court considered the proposed visitation schedule that Davis-Tice

15

submitted and the "case file, [the court's] findings and orders, the realities of the distance between parties, . . . and [most importantly, R.E.H.'s] best interests."

¶ 39 When crafting the visitation schedule, the court properly considered the parties' testimony and priorities. For instance, the court allocated Lambert visitation time on Mother's Day and her birthday. And it allocated Felicia and Lambert visitation time during the Logan County Fair, because testimony indicated that they took R.E.H. to the fair each year. Finally, the schedule is not mandatory and can be temporarily changed if the parties come to a mutual agreement in writing. Further, the order does not restrict R.E.H. from choosing with whom he wants to spend his time but, rather, offers him a structure that he could rely on.

¶ 40 In light of the district court's consideration of the evidence, the parties' expressed priorities, and R.E.H.'s best interests, the court's visitation schedule is not manifestly arbitrary, unreasonable, or unfair. *See Arguello*, ¶ 13. Thus, the court did not abuse its discretion when it adopted the schedule.

## III.   Request for Sanctions

¶ 41    Davis-Tice, Felicia, and Lambert note that Carlson "failed to use the correct [notice of appeal] form" when she filed her appeal. Davis-Tice argues that because Carlson used the incorrect notice of appeal form and the contents of her appellate brief did not comply with the Colorado Appellate Rules, the appeal is frivolous and we should sanction Carlson under C.A.R. 38(b).  Davis-Tice also asks us to dismiss the appeal and grant attorney fees to the assisted living facility's attorney.  Felicia and Lambert ask for double costs as a sanction for Carlson's failure to serve her opening brief on Felicia.

¶ 42    An appeal can be deemed frivolous as filed or frivolous as argued.  *Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006).  As relevant here, an "appellant's misconduct in arguing the appeal may be such as to justify holding the appeal to be '*frivolous as argued.*'" *Id.* (citation omitted).  Under C.A.R. 38(a), we can "dismiss an appeal . . . or impose other sanctions [we] deem[] appropriate, including attorney fees, for the failure to comply with . . . the[] appellate rules."

¶ 43    Although Carlson made errors in form selection, record citation, and service, we conclude that her appeal is not frivolous as argued.  Carlson is a pro se party, and while she must comply with the appellate rules, we don't perceive her procedural missteps as constituting misconduct.  Carlson substantially complied with C.A.R. 28 and C.A.R. 32(h).  While she failed to use headings and make clear and concise arguments, Carlson did present an argument for each issue and briefly concluded with "the precise relief sought," in compliance with C.A.R. 28(a)(8).

¶ 44    Davis-Tice also argues that we should dismiss Carlson's appeal because she failed to serve her opening brief on Davis-Tice. It is true that C.A.R. 25(c) requires that "[c]opies of all documents filed by any party . . . be served by a party or person acting for that party on all other parties to the appeal or review."  While Carlson was required to serve the opening brief on Davis-Tice, it appears that Carlson served the opening brief on some of the other parties, but not Davis-Tice.  However, we know that Davis-Tice received actual notice of the opening brief because she filed a timely answer brief.  As a general principle, "sanctions should be directly commensurate with the prejudice caused to the opposing party."

*Trattler v. Citron*, 182 P.3d 674, 682 (Colo. 2008). Davis-Tice does not allege prejudice from the failure of service, and we do not perceive any. So there is no basis to dismiss the appeal as a sanction for Carlson's failure to serve one of the parties.

¶ 45 Davis-Tice further asks for attorney fees for the assisted living facility. But Davis-Tice is not counsel for the assisted living facility — which did not appear in this appeal — and she cannot request attorney fees on its behalf. C.A.R. 38(b) ("If the appellate court determines that an appeal . . . is frivolous, it may award damages . . . , including attorney fees, . . . to the *appellee or cross-appellee*." (emphasis added)).

¶ 46 As for Felicia and Lambert, they "ask[] to be awarded damages of single or double costs of all expenses related to the appeal" because Carlson failed to use the correct form and failed to serve Felicia. We deny the request for double costs as a sanction for the same reasons we deny the similar sanctions requests discussed above. Accordingly, we deny all the requests for sanctions.

¶ 47 However, because we affirm the orders, costs are taxed against Carlson. *See* C.A.R. 39(a)(1). Any party seeking to recover costs

19

against Carlson may do so in the district court by following the procedure set forth in C.A.R. 39(c).

## IV.   Disposition

¶ 48   The orders are affirmed.

JUDGE DUNN and JUDGE LIPINSKY concur.