## No. 27342

**Hugh E. Sweeney, Conservator of the Estate of Edythe G. Walker, protected person v. Jane Walker Summers, Personal Representative of the Estate of Lee H. Walker, a/k/a Lee Howell Walker, deceased**

(571 P.2d 1067)

Decided October 11, 1977.

W. David McClain, Edwin A. Williams, Samuel J. Eaton, Stephen W. Miller, for petitioner-appellant.

Ernest O. Tullis, for respondent-appellee.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

The primary question before us is whether section 15-11-203, C.R.S. 1973, of the Colorado Probate Code is constitutional. The subsidiary question, if the first is answered in the affirmative, is whether the court abused its discretion. We hold that it is constitutional and that the court acted properly under the circumstances. We therefore affirm.

Lee Walker died testate on November 4, 1974, leaving real property[1] to his sister, the respondent, with whom he was tenant in common, and the residue of his estate to his wife. His widow, Edythe G. Walker, had suffered a debilitating stroke in 1972 which rendered her physically and mentally incompetent.

Hugh E. Sweeney, the petitioner, was appointed conservator of the estate and affairs of Edythe Walker, a protected person. Sweeney is the son of Edythe Walker. Pursuant to section 15-14-416(2), C.R.S. 1973, Sweeney filed a petition for instructions concerning his fiduciary responsibility in regard to electing to take against Walker's will, section 15-11-

---

[1]This property consisted of a farm and a residence which Walker and his sister had inherited from their parents in 1963.

203. He contended that an election against the will was in the protected person's best interests, as it was *necessary in order to provide adequate support* for her during her probable life expectancy.

The probate court held two hearings on Sweeney's petition. The parties stipulated that Edythe Walker was mentally incompetent and that it was highly improbable that she would ever recover, either physically or mentally. The parties further stipulated that Edythe Walker's age was 65 at the date of the hearing and that her statutory life expectancy was 12.31 years.[2]

Applying the statutory tests, the court entered an order which held that under the circumstances it was not necessary to allow the election in order to provide adequate support for the widow. It is this order which is under review.

I.

Section 15-11-203, C.R.S. 1973,[3] the statute under attack, states: "The right of election of the surviving spouse may be exercised only during his lifetime by him. *In the case of a protected person, the right of election may be exercised only by order of the court in which protective proceedings as to his property are pending, after finding that exercise is necessary to provide adequate support for the protected person during* his probable life expectancy." (Emphasis added.)

■ The petitioner contends that the italicized language of this section is an unconstitutional denial of equal protection under the Fourteenth Amendment because it sets up a classification which wrongfully distinguishes between a *competent* surviving spouse and an *incompetent* surviving spouse.[4] He argues that since *adequacy of support* is not a prerequisite condition to a competent spouse's election under the statute, such a requirement as to an incompetent spouse constitutes a denial of equal protection under the Fourteenth Amendment. He further contends that in treating incompetent spouses differently than competent spouses, section 15-11-203 adversely singles out a class of persons whom the state purportedly seeks to protect and that the classification is not rationally related to the state's interest. We are not persuaded by the appellant's arguments.

---

[2]*See* sections 13-25-102 and 103, C.R.S. 1973.

[3]Section 15-11-203 is taken directly from section 2-203 of the Uniform Probate Code. The Code's language has been adopted by Alaska, Alaska Stat. §13.11.080 (1972); Idaho, Idaho Code §15-2-204 (1977 Supp.); Montana, Mont. Rev. Codes Ann. §91A-2-203 (1975); and Utah, Utah Code Ann. §75-2-203 (1977). Florida and Nebraska have also adopted a variation of U.P.C. 2-203. Fla. Stat. Ann. §732.210 (West 1976) and Neb. Rev. Stat. §30-2315 (1975) use the "best interests" test in deciding whether or not to grant permission to elect against the will.

[4]Section 15-11-201(1), C.R.S. 1973 (1976 Supp.), states:
"If a married person domiciled in this state dies, the surviving spouse has a right of election to take an elective share of one-half of the augmented estate. . . ."

■ The equal protection clause of the Fourteenth Amendment does not deny a state the power to treat classes of persons differently as long as the classifications are based on reasonable differences and are not arbitrary. *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *People v. Gould, Jr.*, 188 Colo. 113, 532 P.2d 953 (1975).

■ A somewhat similar argument to that of the petitioner was made in *Rhoades v. Rhoades*, 188 Colo. 423, 535 P.2d 1122 (1972) where the husband, who was the noncustodial parent, claimed that the statute giving the custodial parent the right to determine the child's upbringing, "including his education, health care, and religious training," denied him the equal protection of the law. This court in *Rhoades* said:

"This argument is totally without merit. A legislative classification, where, as here, the class created is not a suspect one, need only be 'reasonable, not arbitrary, (resting) upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' *Royster Guano Co. v. Virginia*, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989. Here it is obvious that the legislature considered that the best interest of the child would be served by having these crucial decisions made by the parent who has the most constant and intense contact with the child — the custodial parent."

The crucial decisions in matters concerning the affairs of protected persons have been delegated by section 15-14-402, C.R.S. 1973, *infra*, exclusively to the trial court and not to the conservator. Note specifically subsections (a) and (b).[5]

The challenged class in the instant proceeding is that of "protected persons," as distinguished from those who have the legal capacity to manage their own property and affairs. Sections 15-14-101, *et seq.*, C.R.S. 1973, and sections 15-14-401, *et seq.*, C.R.S. 1973.

■ A brief reference to the statutory provisions will suffice to indicate the concern of the General Assembly for the "protected person" and the public policy of this state in reference to this class of citizens. A "protected person," by definition, "is a minor or other person for whom a conservator has been appointed or other protective order has been made."[6]

Also in the definitional section we find this:

"(3) A 'protective proceeding' is a proceeding under the provisions of section 15-14-401 to determine that a person cannot effectively manage or apply his estate to necessary ends, either because he lacks the ability or is otherwise inconvenienced, or because he is a minor and to secure administration of his estate by a conservator or other appropriate relief."

---

[5]*See* Annot. 21 A.L.R.3d 320 (1968).
[6]Section 15-14-101(2), C.R.S. 1973.

The statutory scheme provides that protective proceedings are initiated by petition and, after notice and hearing, the court may appoint a conservator. The conservator of Edythe G. Walker was thus appointed by the court.[7] Relevant to the provision for appointment is section 15-14-401(3) which, in pertinent part, provides:

"Appointment of a conservator *or other protective order* may be made in relation to the estate and affairs of a person if the court determines that a person is unable to manage his property and affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, advanced age, . . .; and that the person has property which will be wasted or dissipated unless proper management is provided, or that funds are needed for the support, care, and welfare of the person or those entitled to be supported by him and that protection is necessary or desirable to obtain or provide funds." (Emphasis added.)

The statutory scheme then continues with a significant provision. Section 15-14-402, C.R.S. 1973, reads:

"(1) After the service of notice in a proceeding seeking the appointment of a conservator *or other protective order* and until termination of the proceeding, the court in which the petition is filed has:

"(a) Exclusive jurisdiction to determine the need for a conservator or other protective order *until the proceedings are terminated*;

"(b) Exclusive jurisdiction to determine how the estate of the protected person which is subject to the laws of this state shall be managed, expended, or distributed to or for the use of the protected person or any of his dependents." (Emphasis added.)

 It is conceded by the petitioner that the equal protection clause does not preclude creation of distinct classes; that it requires only that such classifications be reasonably related to some legitimate state interest. He further concedes the state has a legitimate interest in incompetent persons by quoting the following passage from *Shapter v. Pillar*, 28 Colo. 209, 63 P. 302 (1900):

"It falls to the state to take care of those who, by reason of mental incapacity, cannot take care of themselves. *Ex Parte Cranmer*, 12 Ves. 445."

In *Shapter* the court observed:

"In the absence of any statutory provision on the subject, a court of chancery, under the rules of common law, would undoubtedly have authority to protect the estate of those who by reason of mental infirmities, were unable to do so, and to accomplish this end, could appoint a proper person for that purpose."

It thus appears the class created by the statute here is grounded in the common law and is therefore not suspect nor arbitrary, but rests upon

---

[7]Section 15-14-401(1).

some ground of difference having a fair and substantial relation to the object of the legislation. The scheme of the statute does not deprive incompetent spouses of any fundamental (constitutional) right and there is a rational basis to support it. *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Bensing v. United States*, 551 F.2d 262 (10th Cir. 1977).

■ Where, as here, neither a suspect classification nor the infringement of fundamental rights is involved, an alleged statutory discrimination will not be invalidated if any state of facts reasonably may be conceived to justify it. *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *McDonald v. Board of Election Commissioners*, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); *Johnson v. Division of Employment*, 191 Colo. 38, 550 P.2d 334 (1976); *Mosgrove v. Town of Federal Heights*, 190 Colo. 1, 543 P.2d 715 (1975).

The United States Supreme Court over fifty years ago made a relevant statement on the operation of the Fourteenth Amendment on the states' right to restrict the right to inherit property when it said:

"The Fourteenth Amendment does not deprive the states of the right to determine the limitations and restrictions upon the right to inherit property, but, 'at most, can only be held to restrain such an exercise of power as would exclude the conception of judgment and discretion, and which would be so obviously arbitrary and unreasonable as to be beyond the pale of governmental authority.' *Campbell v. California*, 200 U.S. 95, 50 L.Ed. 388, 26 Sup. Ct. Rep. 182 [1905]."

*Maxwell v. Bugbee*, 250 U.S. 525, 542, 40 S.Ct. 2, 7, 63 L.Ed. 1124, 1132 (1919). Section 15-11-203 is not beyond the pale; it is constitutional.

■ From the foregoing, it is clear that the trial court has a broad discretion in all matters relating to protected persons, which is exclusive. It is also clear that the statutory scheme prescribes an objective standard for the court's guidance in making its decision either under the will or under the statute in the case of the surviving spouse. That standard is based on the following italicized language from section 15-11-203:

"[T]he right of election may be exercised only by order of the court in which the protective proceedings as to his property are pending, *after finding that exercise is necessary to provide adequate support for the protected person during his probable life expectancy.*"

The statutory scheme also strongly implies that in its determination of "adequate support" the court is to take into consideration the welfare and best interests of the protected person and not that of his heirs, except dependents. In answering the subsidiary question posed in the opening paragraph, the application of these standards will be expanded.

## II.

The second issue for resolution is whether, under the circumstances of this case, the trial court abused its discretion in not electing, on behalf of

the protected person, to take under the statute. The petitioner contends that the trial court abused its discretion in not making the election which was most advantageous to Mrs. Walker. This, he contends, would, of necessity, require the choice which would net the greater pecuniary benefits. There is a division of authority on this point.

The majority view, and the one which is more compatible with the public policy of this state, holds that pecuniary advantage is one factor to be considered, but not the controlling one.[8] Whether the court should determine that the protected person take one way or the other depends on the facts and circumstances of each case. In addition to the basic statutory test found in section 15-11-203, the courts of the majority states have set out numerous guidelines to aid the trial courts. *Turner v. First National Bank & Trust Co. of Muskogee*, Okla., 262 P.2d 897 (1953) and cases cited therein. These factors should also be considered under our statutory scheme.

One factor that is generally recognized is that not every widow disregards her husband's last wishes merely because she would obtain a greater quantum of his estate by so doing; sentiment enters into such situations. *Hogan v. Roche*, 95 N.H. 368, 63 A.2d 794 (1949). Also, it is agreed that the matter of enriching the widow's estate in order to benefit her heirs should not be a factor in the court's consideration.

The Uniform Probate Code admonishes the court that "unless displaced by the particular provisions of this code, the principles of law and equity supplement its provisions." Section 15-10-103. With this in mind, we turn to the language of *Van Steenwyck v. Washburn*, 59 Wis. 483, 17 N.W. 289 (1883) which held the following principles should be entitled to weight in making a determination such as we have here:

"The right to dispose of one's estate in accordance with his own wishes is a sacred right, which a court of equity will not disregard or destroy. . . .

". . . But if the court must elect for the widow the more valuable interest, without reference to any other consideration, then it really will exercise no discretion. But we think it is the clear duty of the court to exercise a sound discretion in the matter — to consider everything having a legitimate bearing on the election to be made. . . ."

In this case, although the major bequests of the deceased's will were to his sister, rather than his wife, we cannot say, as a matter of law, that the protected person was left without financial security or that the decision of the trial court was not in her best interest. The petitioner's inventory of the protected person's estate, comprising business assets of her own; real estate in which she was a joint tenant with her deceased

---

[8]*Kinnett v. Hood*, 25 Ill.2d 600, 185 N.E.2d 888 (1962), 3 A.L.R.3d 1; *see also*, Annot., 3 A.L.R. 6, 31 (1965).

husband; proceeds from her husband's insurance of which she was the sole beneficiary; proceeds from her husband's government pension; and various bank accounts, has an estimated net value of $137,000. This includes the value of the personalty left by the deceased to his wife.

The trial court found, on the basis of competent evidence, that the protected person had sufficient income to provide adequate support. It is implicit that the court, in determining whether to authorize the right of election by the conservator, has the power to grant or refuse such right without being bound by a mathematical formula. *See Turner v. First National Bank & Trust Co. of Muskogee, supra.* Considerations relevant to the incompetent's best interest must also be examined. As indicated above, the court has broad discretion, and we will not disturb its findings absent a clear abuse of discretion.

The judgment is affirmed.

MR. JUSTICE LEE does not participate.