No. 80-53

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

_____

IN THE MATTER OF THE ESTATE
OF HERMAN G. MERKEL,
                    Deceased.

_____

Appeal from:   District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin.
               Honorable Joseph Gary, Judge presiding.

Counsel of Record:

    For Appellant:

        Steven D. Nelson argued, Bozeman, Montana

    For Respondent:

        Moore, Rice, O'Connell and Refling, Bozeman, Montana
        Perry J. Moore argued, Bozeman, Montana

_____

                          Submitted:  September 11, 1980

                          Decided: OCT 27 1980

Filed: OCT 27 1980

_Thomas J. Kearney_
                          Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The personal representative of the Estate of Celia J. Merkel appeals from an order entered in the District Court, Eighteenth Judicial District, dismissing a petition for allowance of claims on behalf of the estate of Celia J. Merkel. In his ruling, the district judge denied the claims for the homestead allowance, exempt property, and an elective share. We affirm in part and reverse in part.

The facts giving rise to this decision are important, particularly with respect to the time sequence involved. In 1967, Herman G. Merkel and Celia J. Merkel married, both of them over 70 years old at the time. In October 1977, Sterling Hunter was appointed guardian of Celia Merkel by a Montana court. Herman Merkel died in December 1978, having executed a will earlier which left nothing to his wife Celia. On June 4, 1979, Celia Merkel, through her guardian, filed a claim for exempt property and homestead allowance, and filed a petition for an elective share. Celia died 9 days later on June 13, 1979.

On August 6, 1979, Sterling Hunter, the personal representative of the estate of Celia J. Merkel, filed a petition for allowance of the same claims on behalf of the estate of Celia Merkel. The personal representative of Herman Merkel's estate moved to dismiss the petition, asserting that Celia's failure to survive extinguished her claims, and that her estate had no valid claims. The district judge granted the motion, ruling that the homestead allowance and exempt property were life estates only. The district judge also denied Celia Merkel's petition for an elective share, because a court order had not been entered in which a finding was made that the election was necessary to support Celia Merkel as a protected person.

The appellant brings two issues before this Court:

(1) Whether section 72-2-703, MCA, requiring a showing of need in order for a protected spouse to claim an elective share,

is violative of the equal protection clauses of the United States Constitution and the Montana Constitution?

(2) Whether sections 72-2-801 and 72-2-802, MCA, providing for a homestead allowance and exempt property, contemplate life estates only or rather estates in fee for which a surviving spouse's estate can bring claim?

Appellant's first contention is that section 72-2-703 is unconstitutional. That statute describes who may exercise the right of election:

> "Right of election personal to surviving spouse. The right of election of the surviving spouse may be exercised only by him. In the case of a protected person, the right of election may be exercised only by order of the court in which protective proceedings as to his property are pending after finding that exercise is necessary to provide adequate support for the protected person during his probable life expectancy."

As the statute indicates, a competent spouse is not restricted in any way in making the election, but a protected spouse has to pass the hurdle of showing need before claiming the possible benefits of an election. Clearly, the statute sets up a classification--a classification which appellant contends denies equal protection to protected spouses.

The legislature is empowered to classify persons for purposes of legislation, State v. Craig (1976), 169 Mont. 150, 156, 545 P.2d 649, 653, and in reviewing a statute, this Court presumes that the statute statute is constitutional. Great Falls Nat. Bk. v. McCormick (1968), 152 Mont. 319, 323, 448 P.2d 991, 993. Appellant admits that this classification does not involve a "fundamental right" or a "suspect class", which would require a finding by this Court of a compelling state interest in order to uphold the class. State v. Jack (1975), 167 Mont. 456, 461, 539 P.2d 726, 729. Rather, this Court need only determine that the "'classification [is] reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. . .'" State v.

- 3 -

Craig, supra, 169 Mont. at 156, 545 P.2d at 653.

The appellant has the burden of proving that the classification is arbitrary, State v. Jack, supra, 167 Mont. at 461, 539 P.2d at 729, a burden which appellant has not sustained here.

We note at the outset that the State legislatures have traditionally set apart the class which is involved here, delegating the care of incompetent persons to the State. The Colorado Supreme Court stated in the early case of Shapter v. Pillar (1900), 28 Colo. 209, 63 P. 302, 304, "It falls to the State to take care of those who, by reason of mental incapacity, cannot take care of themselves."

This tradition of delegating care of incompetent persons to the State was the basis of a recent Colorado Supreme Court decision which upheld the constitutionality of the Colorado code section which corresponds to section 72-2-703, MCA. See Sweeney v. Summers (1977), 194 Colo. 149, 571 P.2d 1067. That court noted that the entire statutory scheme pertaining to incompetent persons has placed their care ultimately with the State. Sweeney, supra, 571 P.2d at 1069. See sections 72-5-401 et seq., MCA. Additionally, pre-Uniform Probate Code law in most states gave to a court of competent jurisdiction the responsibility for making the decision of whether or not the incompetent spouse should elect against the decedent's will, 80 Am Jur 2d Wills §§1614-1615; Annot., 3 ALR3d 6, §3, a decision which was based primarily on the needs of the incompetent spouse.

The primary purpose of the elective share statutes is to insure that the surviving spouse's needs are met, and that the spouse is not left penniless. Annot., 3 ALR3d 6, §3. Presumably, in making the decision whether to elect or not, the competent spouse would consider many factors, with need being the most persuasive. Because of the statute in question, the court is required to make the election decision for the incompetent solely on the basis of need. Section 72-2-703, MCA.

This statute clearly deprives the incompetent spouse of a

choice, and further deprives the incompetent of any excess property to pass on to heirs, to invest, or to use for unnecessaries. However, providing funds for these purposes is not the primary aim of the statute and is merely an incidental benefit, available only if the decedent's estate happens to be large enough to allow these extras.

By being subject to a protective order, the incompetent has already been deprived of the right to make choices in regard to property. Additionally, the court has before it, by virtue of the protective proceedings, all of the information necessary to determine what is in the best interests of the protected spouse. The statute insures that the spouse will be adequately cared for, thus fulfilling the ultimate purpose of the statute, while denying the spouse only the discretionary income.

We find this statute to be reasonable and not arbitrary when considered in light of the traditional role of the court with respect to incompetent persons and when considered in light of the purpose of the statute. The district judge acted properly in denying the petition for an elective share.

The second issue which appellant brings before this Court involves a determination of the nature of the interest created by the homestead allowance and exempt property statutes. Those statutes provide in part:

> "Homestead allowance. (1) A surviving spouse of a decedent who was domiciled in this state is entitled to a homestead allowance of $20,000.
> . . .
>
> "(2) The homestead allowance is exempt from and has priority over all claims against the estate.
>
> "(3) Homestead allowance is in addition to any share passing to the surviving spouse or minor or dependent child by the will of the decedent unless otherwise provided, by intestate succession, or by way of elective share."
> Section 72-2-801, MCA.
>
> "Exempt property. (1) In addition to the homestead allowance, the surviving spouse of a decedent who was domiciled in this state is entitled from the estate to value not exceeing $3,500. . . Section 72-2-802, MCA.

Neither of the statutes indicates what type of interest is

created, i.e., whether it is a fee interest in the surviving spouse, or a life estate only which is extinguished by the spouse's death. Celia Merkel attempted to claim these benefits as a surviving spouse, but she died before receiving them. Appellant contends that Celia Merkel's estate is entitled to these benefits because she was a surviving spouse at the time she attempted to claim them.

The courts of other states which have enacted the Uniform Probate Code (UPC) have not considered this question, nor do the Commission comments specifically address this issue. Pre-code law in Montana indicates that the homestead was a life estate only. The purpose of the homestead was to preserve the fee interest for the heirs of the decedent, while setting aside a life estate, safe from creditors, for the spouse and family of the decedent. Kerlee v. Smith (1912), 46 Mont. 19, 22, 124 P. 777; 40 Am Jur 2d, Homestead, §4. The early cases, however, were based on a Montana statute which specifically mandated that the homestead was a life estate, a statute that was repealed with the adoption of the UPC:

> " . . . If the property set apart be a
> homestead, selected from the separate property
> of the deceased, the court or judge can only set
> it apart for a limited period, to be designated
> in the order, which shall be a life estate to
> husband or wife, and the title vests in the
> heirs of the deceased, subject to such order."
> Section 91-2405, R.C.M. 1947. (Emphasis added.)

In determining that the two new interests created by the UPC were intended to be life estates, the district judge relied on this traditional view of the homestead, and on a 1960 Missouri case, interpreting the Missouri Homestead Allowance Statute (not UPC). See Schubel v. Bonacker (Mo. 1960), 331 S.W.2d 552. The Missouri court discussed the origins of the homestead, noting that neither the former homestead nor dower survived the death of the surviving spouse. The object of the homestead to protect the family would not "be served by the payment of the homestead allowance to the estate of a surviving spouse." Schubel, 331 S.W.2d at 554, supra.

- 6 -

This Court agrees with the district judge that the primary purpose of the homestead allowance and exempt property is to protect the family of the decedent. However, we find that sections 72-2-801 and 72-2-802, MCA, giving these rights to a surviving spouse, contemplate an interest which does not terminate at the surviving spouse's death, so long as the spouse survives the decedent for the required 120 hours, section 72-2-205, MCA.

Appellant argues that the 120-hour provision in itself establishes a fee interest in a surviving spouse, and that by surviving Herman Merkel for nearly six months, Celia Merkel's estate was entitled to these benefits. Section 72-2-205, MCA, provides in part:

> "Requirement that heir survive decedent by one hundred twenty hours. Any person who fails to survive the decedent by 120 hours is deemed to have predeceased the decedent for purposes of homestead allowance, exempt property, and intestate succession, and the decedent's heirs are determined accordingly . . ."

Celia Merkel clearly qualifies as a surviving spouse under this statute, but this statute does not define the nature of the interest created in the survivor, as to whether it is terminated upon the survivor's death.

Although the homestead allowance and exempt property continue the tradition of making statutory rights available to a surviving spouse, the Montana legislature chose not to identify either of these interests as life estates. Since this was explicit in the language of section 91-2405, R.C.M. 1947, the former homestead provision, we assume that the legislature purposely omitted the "life estate" limitation and we will not imply it. See C. Sands, Sutherland Statutory Construction, §45.12 (4th ed. 1972). In so construing the statute, we rely on the rule of statutory construction which provides:

> "[W]hen a statute is revised, some part being omitted, the omitted parts are not readily to be supplied by construction, but are ordinarily to be construed as annulled." State v. Richardson (1953), 174 Kan. 382, 256 P.2d 135, 139.

The new statutes appear clear on their face. The respon-

dent has not brought before the Court sufficient evidence to overcome the presumption that in passing new legislation, the legislature intended to make a change in existing law. Mont. Dept. of Rev. v. Am. Smelting & Refining (1977), 173 Mont. 316, 325, 567 P.2d 901, 906.

The appellant raises other arguments which indicate to this Court that the drafters of the UPC did not intend to limit these interests to life estates. The present homestead allowance is no longer an interest just in land, but is an allowance which may be satisfied in any type of property. Terming these interests life estates would appear to undercut one of the expressed purposes of the UPC, that is "to simplify . . . the law concerning the affairs of decedents." Section 72-1-102, MCA. Court involvement could drag on for years in order to insure the transfer of the property to the remaindermen, and the courts could be called upon to hear suits for waste against the life tenant. Too, with the possibility of satisfying the statutory allowance in money or personal property, the courts would be in a position of having to determine the use which a life tenant could make of the property. See 51 Am Jur 2d, Life Tenants, §§34-36.

One other point merits attention. The provision in the Uniform Probate Code providing for a _Family_ _allowance_ specifically states that "the death of any person entitled to family allowance terminates his right to allowances not yet paid." Section 72-2-803, MCA. The comments to that section provide that " . . . the allowance provided by this section does not qualify for the marital deduction under the Federal Estate Tax Act because the interest is terminable." This is the only statute in the "Family Protection" section of the UPC with such a provision. This omission implies that the homestead allowance and exempt property were meant to qualify for the marital deduction. If so, the interests created cannot be terminable interests. See section 2056, I.R.C. (1954).

In 1979 the legislature of Nebraska added a provision to

- 8 -

its version of the UPC in order to assure that the homestead allowance and exempt property would qualify for the marital deduction. See §30-2325, R.S.N. 1943, reissue of 1979, which provides in part that

> "[t]he homestead allowance, the exempt property . . . shall vest in the surviving spouse as of the date of decedent's death, as a vested indefeasible right of property, shall survive as an asset of the surviving spouse's estate if unpaid on the death of such surviving spouse, and shall not terminate upon the death or remarriage of the surviving spouse."

We find that such a provision is not necessary. It appears clear to us from the wording of the statute itself, as well as from the expressed purposes of the UPC, that the drafters intended that the surviving spouse should take a fee interest in the homestead allowance and exempt property. By surviving the decedent for 120 hours, Celia Merkel and her estate became entitled to those benefits absolutely. The district judge erred in denying those claims on behalf of Celia Merkel's estate.

This case is remanded to the District Court for entry of judgment in accordance with this opinion.

_Frank D. Haswell_
-----------------------------------
Chief Justice

We concur:

_Gene B. Daly_
------------------------------

_John Conway Harrison_
------------------------------

_Daniel J. Shea_
------------------------------

_John C. Sheehy_
------------------------------
Justices