**In re the Matter of O.R.L., a Minor Child, and Trudy Carra-deSalero, Respondent–Appellant,**

v.

**Michael R. SMITH, Petitioner–Appellee.**

**No. 99CA0293.**

Colorado Court of Appeals, Div. II.

Feb. 3, 2000.

Certiorari Denied May 30, 2000.

Michael M. O'Brien, Fort Collins, Colorado; Kraemer & Golden, P.C., Randy Golden, Fort Collins, Colorado, for Respondent–Appellant.

William G. Kaufman, P.C., William G. Kaufman, Loveland, Colorado, for Petitioner–Appellee.

Lococo & Peterson, LLC, Randall C. Lococo, Fort Collins, Colorado, Guardian Ad Litem.

Opinion by Judge RULAND.

Respondent, Trudy Carra-deSalero, appeals from the order of the probate court appointing petitioner, Michael R. Smith, the guardian and conservator for her minor son

O.R.L. We affirm in part and remand for further proceedings.

O.R.L. was born April 9, 1982, and lived with respondent until the events occurred that precipitated this proceeding. O.R.L.'s father was never married to respondent. However, he provided ample financial support for O.R.L. and respondent during the father's lifetime.

O.R.L. met petitioner in December 1996. Later, at respondent's request, petitioner became O.R.L.'s "mentor." Petitioner is a retired military officer and a member of the school board.

That summer, O.R.L. went to work for petitioner at an inn. It was agreed that O.R.L. would reside at the inn with the other live-in employees. O.R.L. remained in regular contact with respondent and returned to live at home that fall.

O.R.L.'s father died in October 1997. He named O.R.L. the sole beneficiary of both his estate and a trust. The value of the decedent's assets was estimated at $490,000. Shortly thereafter, the relationship between respondent and O.R.L. began to deteriorate primarily based on O.R.L.'s belief that respondent had misled him about his father's character and past financial support.

During the next several months, respondent requested and received approximately $23,000 from the father's estate for rent and other living expenses. The trust also provided $10,000 to O.R.L. for the purchase of a pick-up truck that was titled jointly in the names of respondent and O.R.L.

In the summer of 1998, O.R.L. again worked for petitioner, this time at an inn located across the street from a residence rented by respondent. However, O.R.L. resided at the inn.

The personal representative of the father's estate began distributing trust funds directly to O.R.L. and petitioner based on the personal representative's concerns that respondent had misused previously disbursed funds. At the end of the summer, O.R.L. refused to return to respondent's residence.

A number of confrontations and disputes between the parties occurred thereafter and resulted in petitioner's request to be appointed guardian. Respondent countered with a request for an injunction against petitioner to prevent him from having contact with O.R.L.

The Department of Social Services investigated two anonymous neglect complaints regarding O.R.L. and the relationship with respondent, and both complaints were deemed unsubstantiated. After an unannounced home visit, a caseworker reported that the home was cluttered, but was a "low-risk for neglect."

The court appointed a guardian *ad litem* to file a report with recommendations for resolution of the issues between the parties. The guardian *ad litem* did so, and recommended that O.R.L. should reside with petitioner. His initial position was that respondent should serve as the legal guardian. On appeal, however, the guardian *ad litem* seeks to sustain the court's order.

After an evidentiary hearing, the trial court entered extensive findings of fact and conclusions. The court determined that respondent "abandoned" O.R.L. as that term is used in § 15–14–204(1)(c), C.R.S.1999, thus requiring appointment of a permanent guardian. In the alternative, the court found that appointment of a guardian was in O.R.L.'s best interests without regard to whether any abandonment had occurred. The court then appointed petitioner. This appeal followed.

## I.

In its findings, the trial court recognized that no physical abandonment of O.R.L. had occurred. However, it determined that an emotional abandonment had taken place based upon respondent's immaturity and failure to demonstrate the requisite parenting skills necessary to parent O.R.L.

Respondent first contends that the trial court erred in finding that she had abandoned O.R.L. in any respect for purposes of § 15–14–204(1)(c). She further contends that the court erred in finding that it was in O.R.L.'s best interests to appoint petitioner as a guardian. We conclude that it is unnecessary to address the abandonment issue, and disagree with the remaining contention.

Section 15–14–207(3), C.R.S.1999, provides in effect that if appointment of a permanent guardian is not warranted a temporary guardian may be appointed for a term not to exceed nine months.

In our view, the record fully supports appointment of a temporary guardian under § 15–14–207(3).

### A.

Initially, and relative to respondent's factual challenge to the court's ruling, we note that the credibility of witnesses, sufficiency, probative effect, and the weight of the evidence, as well as any inferences or conclusions to be drawn from that evidence, are issues for resolution by the trial court and not this court. As a result, the trial court's findings and conclusions may not be disturbed on review if they are supported by competent evidence in the record or inferences from that evidence. *People in Interest of C.A.K.*, 652 P.2d 603 (Colo.1982).

■ Here, the trial court applied the clear and convincing standard in assessing the evidence. *See* § 15–14–102(3), C.R.S.1999. As noted, the court found that respondent was immature and unable to parent effectively. The court also found that respondent had failed to disclose to O.R.L. the actual financial assistance provided by his father, and that she had taken the pick-up truck from O.R.L. but failed to reveal its whereabouts or reimburse O.R.L.'s trust for its value. Based upon this finding and other evidence, the court found that respondent was more concerned with the financial benefits she would receive from having O.R.L. as a member of her household than her parental responsibility to O.R.L. Because these findings have record support, as noted, we are bound by those findings.

Next, it is undisputed that the relationship between O.R.L. and respondent had deteriorated greatly and that O.R.L. wanted to reside with petitioner and not respondent. There is no suggestion that petitioner is unable to provide an appropriate home for O.R.L. while he completes the remainder of his high school education. O.R.L. has excelled in both classroom work and athletics.

Under these circumstances, the record fully supports the court's conclusion that it was in O.R.L.'s best interest to have petitioner appointed as his guardian and for O.R.L. to reside with petitioner.

### B.

Contrary to the view of the parties, we agree with the trial court that § 15–14–207(3) authorizes appointment of a temporary guardian under the circumstances here.

After outlining the procedure for giving notice of the proceeding, § 15–14–207, C.R.S. 1999, provides:

(2) Upon hearing, if the court finds that a qualified person seeks appointment, venue is proper, the required notices have been given, the requirements of section 15–14–204 have been met, and the welfare and best interests of the minor will be served by the requested appointment, it shall make the appointment. In other cases the court may dismiss the proceedings or make any other disposition of the matter that will best serve the interest of the minor.

(3) If necessary, the court may appoint a temporary guardian, with the status of an ordinary guardian of a minor, but the authority of a temporary guardian shall not last longer than nine months.

■ In our view, subsection 3 of § 15–14–207 stands alone and does not incorporate the requirements of § 15–14–204 for appointment of a permanent guardian. The purpose of the General Assembly must have been to provide for the case where a guardian's services are necessary temporarily even though a parent has not abandoned a child.

We find further support for our conclusion in the fact that § 15–14–207 is part of the Colorado Probate Code. *See* § 15–10–101, C.R.S.1999. One of the purposes of the Code is to simplify the law concerning minors and other protected persons. To that end, a further purpose is "to provide a system of general and limited guardianships for minors." Section 15–10–102(2)(d.2), C.R.S.1999. And, to effectuate these policies and purposes of the Code, the trial court is granted

broad discretion in all cases involving protected persons. *See Sweeney v. Summers*, 194 Colo. 149, 571 P.2d 1067 (1977).

■ To rule, as respondent argues, that abandonment must be shown to warrant appointment of any guardian reaches an unreasonable result. *See* § 2–4–201(1)(c), C.R.S. 1999 (in enacting a statute we must presume that a reasonable result was intended). The court would be powerless to act even when a parent was physically incapacitated by accident or disease. Such a construction would undermine a key policy of the Code. *See* § 15–10–102(2)(d.2)("To provide a system of … guardianships … concerned with management and protection of the estates of incapacitated persons").

To the extent that *In re Krystal S.*, 584 A.2d 672 (Me.1991) may be read to be inconsistent with the result we reach here, we disagree with that decision.

## II.

■ Finally, respondent contends that the trial court erred by failing to award her parenting time. Petitioner responds that this issue was not asserted in the trial court. Even if we assume petitioner is correct, there is no reason why this issue should not be addressed on remand.

Because of the issuance of a supplemental order following the hearing, it is not clear from the record before us precisely when the nine-month period authorized by the statute for the service of a temporary guardian should be deemed to commence. Accordingly, the order is affirmed and the cause is remanded to address the issue of parenting time and for a determination whether the nine-month period has expired and, if so, whether O.R.L. continues to require a guardian.

Judge MARQUEZ concurs.

Judge CRISWELL * dissents.

Judge CRISWELL dissenting.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

My view of this record convinces me that the evidence here failed to provide a proper basis for the appointment of a guardian for the minor. Thus, I dissent from the majority's affirmance of the order of appointment.

It is conceded that the mother is *not* an unfit parent. While the evidence would support the inference that she may have misused some of the funds provided by the minor's father for his support, all of the parties, including the mother, have agreed to the appointment of a financial institution as the guardian of the minor's property. Hence, any past financial transgressions will not reoccur, and the remedy for any past actions is not the appointment of a guardian of the person of the minor.

Also, while it may well be that the mother responded with immaturity to her teenage son's efforts at independence, such immaturity as she may have exhibited has had little adverse effect upon her son. He is well-adjusted and has had, over the years, an exemplary school record.

Section 15–14–204(1), C.R.S.1999, provides that, if the court "finds it will be in the best interests of the minor," a guardian may be appointed for that minor, providing the court *also* finds that: (a) "the parent-child legal relationship has been terminated;" (b) the legal custody of the minor has been suspended by court order; (c) the minor "is found to have been abandoned by the parents;" or (d) the parents request the appointment of such a guardian.

Section 15–14–207(2), C.R.S.1999, then provides that, if "the requirements of section 15–14–204 have been met, *and* the welfare and best interests of the minor will be served," the court may appoint such a guardian. (Emphasis added) This statute also provides that:

In *other* cases the court may dismiss the proceedings or make any *other* disposition of the matter that will best serve the interest of the minor. (Emphasis added)

Finally, § 15–14–207(3), C.R.S.1999, authorizes the court to appoint a "temporary

and § 24–51–1105, C.R.S.1999.

guardian" for a period not to exceed nine months if such appointment is "necessary."

Here, except for the assertion that the mother has been guilty of "emotional abandonment," there is no claim that any of the requirements of § 15–14–204(1) for the appointment of a guardian has been established by the evidence. And, the majority has properly refused to interpret this statute to include this concept. Not only is there no evidence of a legislative intent to include that concept within the otherwise well-accepted meaning of the term "abandonment," but had there existed such an intent, the General Assembly has failed to promulgate sufficient standards to determine when such an "emotional abandonment" is to be deemed to have occurred. The present statute, therefore, fails to place anyone on notice of when the appointment of a guardian on this basis is justified.

Further, I cannot conclude that § 15–14–207(2), in authorizing the court in "other cases" (i.e., when proof of the existence of the criteria established by § 15–14–204(1) has *not* been made) to make "any *other* disposition," authorizes the appointment of a guardian whether or not the statutory criteria are found to exist. While the statute does not specifically delineate the nature of such "other disposition," I am convinced that it does not include the actions taken by the court here.

Finally, while § 15–14–207(3), C.R.S.1999, authorizes the appointment of a temporary guardian "if necessary," I would hold that this statute authorizes such an appointment only if there is no parent available to act as a natural guardian, or if an emergency exists and such a temporary guardian is required during the pendency of proceedings to determine whether any of the necessary requirements for the appointment of a guardian exist.

With respect to this latter subject, however, there is nothing in the court's order to suggest that the appointment here was only of a temporary guardian under § 15–14–207(3). On the contrary, the court relied upon the theory of an "emotional abandonment" under § 15–14–204(1) and the provisions of § 15–14–207(2) to justify the order

entered by it. In addition, none of the parties before us has argued that the court's order can be justified based upon its authority to appoint a temporary guardian. Such a theory is one that has been adopted by the majority on a wholly *"non parte"* basis.

For the foregoing reasons, I would reverse the trial court's order of appointment.