In re the ADOPTION OF a Child, K.L.L., Impartial, Upon the Petition of V.M.D. and P.W.D., Petitioners–Appellees,

and

Concerning B.S.B., J.A.L., R.L., and J.C., Respondents–Appellants.

No. 06CA1884.

Colorado Court of Appeals, Div. A.

March 22, 2007.

Peter Rogers, Boulder, Colorado, for Petitioners–Appellees.

Shughart Thomson & Kilroy, P.C., Paul S. Swedlund, Denver, Colorado, for Respondents–Appellants.

Opinion by Chief Judge DAVIDSON.

B.S.B. (mother), J.A.L. (father), R.L. (paternal grandfather), and J.C. (paternal grandmother) (collectively, the parents) appeal from a judgment granting a petition for adoption of the child, K.L.L., by P.W.D. and V.M.D. (petitioners). We reverse the judgment, vacate the decree of adoption and the order terminating the parental rights, and remand with directions to dismiss the petition.

I.

On August 8, 2003, mother gave birth to a son, K.L.L., in South Dakota. At the time of the birth, mother and father were not married. Mother was sixteen years old and on probation on juvenile adjudications of burglary and petty theft. Father was eighteen and facing sentencing on a conviction for use of methamphetamine. When the child was one month old, father began serving his sentence. Because mother could not care for the child by herself, she and father agreed to place the child temporarily with his maternal aunt in Colorado. Soon after the child arrived, the aunt decided that she could not care for him and, on September 20, placed him with the petitioners, whom she had met through a mutual acquaintance.

On October 16, mother came to Colorado to pick up the child. After being told that the maternal grandmother would not help her care for the child and intended to put her in a "lock-down" facility if she returned to South Dakota with the child, she agreed to leave the child with the petitioners until January 1, 2004.

In November, mother used drugs, violating the terms of probation, and was placed in a chemical dependency treatment program at the South Dakota Human Services Center. Knowing that she could not pick up the child on January 1, she signed a "Declaration of Appointment of Guardian," which was witnessed by the maternal grandmother. The declaration designated the petitioners "full guardians" of the child.

The petitioners then filed a petition seeking guardianship of the child. Notice of the guardianship hearing was sent to the parents, and on January 5, the court appointed the petitioners as the emergency guardians of the child for thirty days. Notice of that order and the right to a hearing was served on the parents.

Prior to expiration of the emergency guardianship, mother's social worker sent a letter to the court, stating that mother did not want the petitioners to have guardianship

of the child. Instead, mother wanted the child placed with her in an independent living program for adolescent mothers, which was available through the South Dakota Juvenile Corrections System. The court referred the letter to the Boulder County Department of Social Services to determine whether the matter should proceed as a dependency or neglect proceeding rather than a probate proceeding. Although the Boulder County assessment confirmed that mother wanted to care for the child and determined that the allegations of neglect were inconclusive, it recommended the filing of a petition in dependency or neglect. Such a petition was never filed.

In the meantime, on February 4, the day the emergency guardianship expired, the court granted the petitioners' request to be appointed as temporary guardians of the child for six months. Six months later, the petitioners filed an ex parte motion seeking an unlimited guardianship or, in the alternative, an extension of the temporary guardianship. The court granted an extension of the temporary guardianship on August 4 and ordered that, upon notice to mother and father, it would consider an unlimited guardianship.

The petitioners did not notify mother or father of the extended temporary guardianship order or set the matter for hearing on an unlimited guardianship. Instead, on May 5, 2005, they filed a petition for custodial adoption under § 19–5–203(1)(k), C.R.S.2006.

At the beginning of the adoption hearing, mother and father objected to the trial court's jurisdiction, asserting that jurisdiction was proper in South Dakota. They also asserted that the petitioners lacked standing to adopt under § 19–5–203(1)(k) because the temporary guardianship had expired prior to the filing of the petition for adoption. At the conclusion of the hearing, the trial court determined that jurisdiction was proper in Colorado and that, having had custody of the child for twenty-three months, the petitioners had standing to seek adoption.

## II.

■ The parents contend that the trial court lacked jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), § 14–13–101, et seq., C.R.S. 2006. They argue that the court should have declined jurisdiction under § 14–13–203, C.R.S.2006, because the child's presence in Colorado was secured by coercion and false pretenses. However, the UCCJEA does not apply to adoption proceedings. Section 14–13–103, C.R.S.2006; *People in Interest of A.J.C.*, 88 P.3d 599 (Colo.2004).

Furthermore, under the Colorado Children's Code, "[a]ny child under eighteen years of age present in the state at the time the petition for adoption is filed ... maybe adopted." Section 19–5–201, C.R.S.2006.

Here, the trial court found that it had jurisdiction over the child, who had been in the State of Colorado for the preceding twenty-three months. The court further found that the child was placed in Colorado with the parents' permission.

These findings are supported by the record, which reveals that mother and father reluctantly agreed to place the child with the maternal aunt in Colorado in September 2003 because they were unable to provide adequate care. The child has remained in Colorado since that time and was present in the state when the petition for adoption was filed in May 2005.

Thus, the trial court did not err in exercising jurisdiction. *See* § 19–5–201.

## III.

■ The parents next contend that the trial court lacked subject matter jurisdiction under § 19–5–203(1)(k) because the petitioners were not the child's legal custodians or legal guardians when the petition for adoption was filed.

■ As a preliminary matter, we note that a trial court, sitting as the juvenile court, has subject matter jurisdiction over termination and adoption proceedings. Sections 19–1–103(70), 19–1–104(1)(d), (g), C.R.S.2006. Therefore, the issue here is one of standing rather than subject matter jurisdiction.

Section § 19–5–203(1)(k) provides that a child may be available for a custodial adoption upon

[s]ubmission of an affidavit or sworn testimony of the *legal custodian or legal guardian* ... that the birth parent or birth parents have abandoned the child for a period of one year or more or that the birth parent or birth parents have failed without cause to provide reasonable support for such child for a period of one year or more and that the *legal custodian or legal guardian* seeking the custodial adoption has had the child in his or her physical custody for a period of one year or more.

(Emphasis added.) *See also* § 19–1–103(34.7) (defining custodial adoption).

■ To satisfy the threshold issue of standing under § 19–5–203(1)(k), the person seeking adoption must establish that he or she is either the legal custodian or legal guardian of the child. Court action is required to take legal custody from a parent or to be appointed as a guardian. Section 19–1–103(60), (73)(a), C.R.S.2006.

■ The petitioners here were awarded temporary guardianship of the child under § 15–14–204(4), C.R.S.2006. While a temporary guardian has the authority of an unlimited guardian, the duration of a temporary guardianship may not exceed six months. Section 15–14–204(4); *see In re O.R.L.,* 996 P.2d 788 (Colo.App.2000). Section 15–14–204(4) further provides that notice of the guardianship proceeding must be given to the parents. Failure to notify the parties constitutes a violation of due process sufficient to deprive the court of jurisdiction, rendering any orders void. *See Woodson v. Ingram,* 173 Colo. 65, 477 P.2d 455 (1970) (holding that the failure to notify the guardians in a proceeding to dismiss the guardianship constituted a violation of due process depriving the court of jurisdiction and rendered the order of dismissal void).

Under the circumstances here, we conclude that the petitioners were not the child's legal guardians when they sought the custodial adoption in May 2005. The initial six-month temporary guardianship expired on August 4, 2004. Although the court entered an order extending the temporary guardianship, that order was void for lack of notice to mother and father. *See Woodson v. Ingram, supra.* Therefore, the petitioners lacked standing to seek custodial adoption as the child's legal guardians under § 19–5–203(1)(k).

Nor were the petitioners the legal custodians of the child. Although they had had physical custody of the child for more than one year, *see In re Custody of C.C.R.S.,* 872 P.2d 1337, 1341–42 (Colo.App.1993) (determining that "physical custody" means the actual, physical possession of the child), *aff'd,* 892 P.2d 246 (Colo.1995), there had been no court action divesting the parents of legal custody. *See* § 19–1–103(73)(a). Accordingly, the petitioners did not have standing to seek custodial adoption as the child's legal custodians under § 19–5–203(1)(k).

In light of this determination, we need not address the parents' challenges to the trial court's findings concerning abandonment and nonsupport.

The judgment is reversed, the decree of adoption and the order terminating parental rights are vacated, and the case is remanded with directions to dismiss the petition for adoption.

Judge NEY * and Judge NIETO * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2006.