STATE OF MINNESOTA

IN SUPREME COURT

A13-1415

Court of Appeals                                                                                      Lillehaug, J.


In re Guardianship and Conservatorship of
Helen Louise Durand, Ward/Protected Person.

Filed:  February 18, 2015
Office of Appellate Courts

_____

Luther M. Amundson, Maser Amundson Boggio & Hendricks, P.A., Minneapolis, Minnesota, for appellant Alternative Decision Makers, Inc.

Lynn Krebes-Lufkin, Boston, Massachusetts, pro se personal representative of the estate of William F. Krebes, respondent.

_____

S Y L L A B U S

Minnesota Statutes § 524.2-212 (2014), which treats protected and non-protected persons differently in probate proceedings, has a rational basis and therefore does not violate the right to equal protection under the Minnesota Constitution.

Affirmed.

Considered and decided by the court without oral argument.

O P I N I O N

LILLEHAUG, Justice.

Helen Durand survived her spouse, but was placed under a conservatorship shortly after his death.  Minnesota Statutes § 524.2-212 (2014) required her conservator, before filing for Durand's elective share in her deceased husband's probate proceeding, to obtain

1

a court order authorizing the filing. The district court declared that this requirement violated the Minnesota Constitution's guarantee of equal protection. The court of appeals disagreed and reversed. Because the statute has a rational basis, we affirm the court of appeals.

I.

William Krebes died on October 14, 2009, survived by his wife Helen Durand. Lynn Krebes-Lufkin, Krebes's daughter, was appointed as personal representative of Krebes's estate by the Dakota County Probate Court.

In early 2010 two of Durand's children, Paul Durand and Mary Jo Kattar, petitioned the Hennepin County District Court for the appointment of a conservator for their mother. The petition stated that Durand needed a conservator because she lacked "the clarity of mind to communicate with an attorney and make informed decisions about what is happening in the [Dakota County] probate case."

The Hennepin County District Court agreed and appointed Alternate Decision Makers, Inc. ("ADMI") as emergency conservator of Durand's estate, with powers limited to matters related to the Dakota County probate proceeding. The district court found that Durand lacked "the capacity to make decisions in her own best interest relative to her late husband's estate . . . and specifically that she lacks the ability to understand legal advice, to work with an attorney in her own best interest and to make a decision based upon the advice of an attorney." Several months later, finding that Durand was

vulnerable to potential financial exploitation, the district court appointed ADMI as general conservator.[1]

ADMI petitioned the Hennepin County District Court for authorization to file for Durand's elective share in the Dakota County probate proceeding. The Hennepin County District Court granted the petition. ADMI then filed an elective share petition on Durand's behalf in the Dakota County Probate Court. But Krebes-Lufkin, acting as personal representative of Krebes's estate, moved the Hennepin County District Court to vacate its order.[2]

Krebes-Lufkin argued that: (1) she did not receive proper notice of ADMI's petition for authorization; and (2) the Hennepin County court had not found that the exercise of the right of election was necessary to provide adequate support for Durand, a "protected person" under a conservatorship, as required by Minn. Stat. § 524.2-212. The Hennepin County District Court granted the motion to vacate and ordered an evidentiary hearing on ADMI's petition.

Prior to the evidentiary hearing, ADMI moved for summary judgment. ADMI argued that Minn. Stat. § 524.2-212 violated Durand's equal protection rights because "protected persons" are "treated differently than similarly situated spouses without such infirmities." ADMI argued that if Durand were not a protected person under the statute,

---

[1] In early 2011, with Durand's condition failing to improve, the Hennepin County District Court also appointed ADMI as her guardian.

[2] Krebes-Lufkin initially challenged the Hennepin County District Court order in the Dakota County probate proceeding, but did not prevail. *See In re Estate of Krebes*, 2012 WL 987310 (Minn. App. Mar. 26, 2012), *rev. denied* (Minn. June 19, 2012).

"her right to an election would be automatic pursuant to Minn. Stat. § 524.2-202." Krebes-Lufkin responded that the rational purpose of the statute was "to ensure that the incapacitated surviving spouse's needs are provided [for] while simultaneously protecting the testamentary wishes of the decedent by ensuring that the conservator does not divert the decedent's assets to the heirs of the protected person."

Concluding that the statute violated the Minnesota Constitution's equal protection guarantee, the district court granted ADMI's motion for summary judgment. The court examined the elective share statute under Minnesota's rational basis test. First, the court held that "[w]hen it comes to choosing whether to elect against a will, there is no reasonable justification for treating spouses acting through conservators differently from spouses acting on their own." Second, the court held that there was "no reasonable connection between the actual effects of the challenged classification and the statutory goals." Third, the court held that while Minnesota may legitimately attempt to have elective share decisions be motivated by need instead of personal gain, "it must enact across-the-board legislation rather than legislation impermissibly targeting spouses who are protected persons."

Krebes-Lufkin appealed. In a published opinion, the court of appeals reversed. *In re Durand*, 845 N.W.2d 821, 823 (Minn. App. 2014). The court of appeals reasoned that because the State "has determined [that] a protected person's impairment warrants additional protections and has legislated accordingly," protected and non-protected surviving spouses are not similarly situated. *Id*. at 826. Because the court of appeals

4

applied a "similarly situated" analysis at the threshold, it did not reach the rational basis test.

We granted ADMI's petition for review.

II.

The only question before us is whether differentiating between protected and non-protected persons in Minn. Stat. § 542.2-212 violates equal protection under the Minnesota Constitution. Whether a statute is unconstitutional is a question of law that we review de novo. *State v. Cox*, 798 N.W.2d 517, 519 (Minn. 2011). Statutes are presumed to be constitutional and our "power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Welfare of B.A.H.*, 845 N.W.2d 158, 162 (Minn. 2014).

A.

The Minnesota Constitution guarantees that "[n]o member of this state shall be disenfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers." Minn. Const. art. 1, § 2. Although the phrase "equal protection" is not used, we have recognized that the Minnesota Constitution "embodies principles of equal protection synonymous to the equal protection clause of the Fourteenth Amendment to the United States Constitution." *State v. Russell*, 477 N.W.2d 886, 889 n.3 (Minn. 1991).

In deciding that Minn. Stat. § 542.2-212 did not violate equal protection, the court of appeals applied a "similarly situated" threshold test. While we have applied such a test in certain equal protection cases, we need not decide whether or how to apply it here,

5

because we can decide the case without great difficulty by applying the proper degree of scrutiny to the classifications created by the Legislature.[3]

If an equal protection challenge under the Minnesota Constitution involves either a suspect classification or a fundamental right, we apply strict scrutiny, which requires the classification to be "narrowly tailored and reasonably necessary to further a compelling governmental interest." *See Greene v. Comm'r of Minn. Dep't of Human Servs.*, 755 N.W.2d 713, 725 (Minn. 2008) (quoting *Hennepin Cnty. v. Perry*, 561 N.W.2d 889, 897 n.7 (Minn. 1997)). We apply intermediate scrutiny to gender-based classifications. *See State ex rel. Forslund v. Bronson*, 305 N.W.2d 748, 750 (Minn. 1981). Otherwise, we apply Minnesota's rational-basis test. *Gluba ex rel. Gluba v. Bitzan & Ohren Masonry*, 735 N.W.2d 713, 719 (Minn. 2007). We have characterized the Minnesota rational-basis test as "a more stringent standard of review" than its federal counterpart. *See Russell*, 477 N.W.2d at 889. Under Minnesota's rational-basis test, a statute must satisfy three requirements:

> (1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; and (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

---

[3] We took such an approach in *In re Child of R.D.L.*, 853 N.W.2d 127, 132 (Minn. 2014), in which we declined to decide whether the similarly situated threshold test applies to classifications warranting strict scrutiny. The statute at issue in *R.D.L.* survived strict scrutiny. *Id.* at 138.

*Id.* at 888 (quoting *Wegan v. Vill. of Lexington*, 309 N.W.2d 273, 280 (Minn. 1981)).

B.

ADMI's equal protection challenge requires us to examine two statutory concepts: the right of election and the nature of conservatorships.

Minnesota Statutes § 524.2-202 (2014) provides surviving spouses with the right of election. The right of election allows a person who survives his or her spouse to elect to take a share of the decedent spouse's "augmented estate," rather than what would be received under the decedent spouse's will. *Id.* The augmented estate consists of:

> the sum of the values of all property, whether real or personal, movable or immovable, tangible or intangible, wherever situated, that constitute the decedent's net probate estate, the decedent's nonprobate transfers to others, the decedent's nonprobate transfers to the surviving spouse, and the surviving spouse's property and nonprobate transfers to others.

Minn. Stat. § 524.2-203 (2014). The amount of the elective share varies from zero to 50 percent of the augmented estate, depending on the length of the marriage. Minn. Stat. § 524.2-202.

The statutory scheme limits the right of election for a surviving spouse who is a "protected person," defined as "a minor or other individual for whom a conservator has been appointed or other protective order has been made." Minn. Stat. § 524.5-102, subd. 14 (2014). In the case of a protected person:

> [T]he right of election may be exercised only by order of the court in which protective proceedings as to the protected person's property are pending, after finding (1) that exercise is necessary to provide adequate support for the protected person during the protected person's probable life expectancy and (2) that the election will be consistent with the best interests of the natural bounty of the protected person's affection.

7

Minn. Stat. § 524.2-212 (2014). No such court order is required for non-protected persons who exercise their rights of election. *See id.*

Conservatorships are governed by Minnesota's version of the Uniform Probate Code. A court may appoint a conservator if it finds: (1) "the individual is unable to manage property and business affairs because of an impairment in the ability to receive and evaluate information or make decisions;" (2) "the individual has property that will be wasted or dissipated unless management is provided or money is needed for the support, care, education, health, and welfare of the individual . . . and that protection is necessary or desirable to obtain or provide money;" and (3) the individual's "needs cannot be met by less restrictive means, including use of appropriate technological assistance." Minn. Stat. § 524.5-409, subd. 1(a) (2014). A court may only grant a conservator the "powers necessary to provide for the demonstrated needs of the protected person." Minn. Stat. § 524.5-417(b) (2014).

While conservators may have wide-ranging duties and powers, conservators are still "subject to the control and direction of the court at all times and in all things." Minn. Stat. § 524.5-417(a) (2014). A conservator must seek approval from the court before performing certain acts on behalf of the protected person, such as making gifts, conveying property, exercising a right of election, or making a will. Minn. Stat. § 524.5-411(a) (2014). Additionally, conservators must keep records of the administration of the estate and make them available to the court and the protected person. Minn. Stat. § 524.5-419 (2014). Any person interested in the protected person's welfare may petition the court to terminate the conservatorship upon a showing that the protected person no

longer needs the conservator's assistance or protection. Minn. Stat. § 524.5-431(c) (2014).

## C.

Minnesota Statutes § 524.2-212 creates two classes: protected surviving spouses and non-protected surviving spouses. On whether this classification violates equal protection, both parties assume that the rational basis standard applies. The parties are correct.

A "protected person" is not a suspect classification like race or alienage. *See In re Harhut*, 385 N.W.2d 305, 310 (Minn. 1986) (identifying examples of suspect classifications). Rather, "protected persons" are similar to the class consisting of mentally disabled individuals in *City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985). In that case, the Court declined to hold that mental disability was even a quasi-suspect classification.[4] *Id.* at 442. It reasoned that the mentally disabled are immutably different from one another in relevant respects, particularly in their ability to function in the everyday world, because the mentally disabled "range from those whose disability is not immediately evident to those who must be constantly cared for." *Id.* at 442-43. This is similar to "protected persons" who are unable to manage property and business affairs and who also range widely in their impairments and the level of care they

---

[4] Quasi-suspect classifications are subject to a heightened standard of review that is more exacting than rational basis review. *See id.* at 446.

require.[5] *See* Minn. Stat. § 542.5-409, subd. 1(c) ("The court, whenever feasible, shall grant to a conservator only those powers necessitated by the protected person's limitations and demonstrated needs and make appointive and other orders that will encourage the development of the protected person's maximum self-reliance and independence.").

Further, the right of election is not a fundamental right. Fundamental rights must be found in or implied from the terms of either the state or federal constitution. *Skeen v. State*, 505 N.W.2d 299, 312-13 (Minn. 1993). Nothing in either constitution appears to protect the right of election or any similar right.[6]

Because "protected persons" are not a suspect class and the right of election is not a fundamental right, we apply rational basis review. Under that standard, we must decide: (1) whether the distinctions between the classes are genuine and substantial; (2) whether there is an evident connection between the needs of the class and the prescribed remedy; and (3) whether the purpose of the statute is one that the State can legitimately attempt to achieve. *Russell*, 477 N.W.2d at 888.

---

[5] Following the *Cleburne* case, we have declined to extend a higher standard of review to classifications based on mental and physical disabilities. *See Harhut*, 385 N.W.2d at 310-11; *see also Gluba ex rel. Gluba v. Bitzan & Ohren Masonry,* 735 N.W.2d 713, 719-20 (Minn. 2007).

[6] Two other states have held that such rights are not fundamental. *See Sweeney v. Summers*, 571 P.2d 1067, 1070 (Colo. 1977) (holding that "the scheme of the [elective share] statute does not deprive incompetent spouses of any fundamental (constitutional) rights"); *In re Epperson*, 679 S.W.2d 792, 793-94 (Ark. 1984) (declining to hold that dower rights are fundamental rights, as they arise from statute).

First, the distinctions are genuine and substantial. Protected spouses are under an order, such as a conservatorship, that recognizes their limited ability to manage financial affairs. On the other hand, non-protected spouses are ordinarily free to conduct their financial affairs as they wish, even to the detriment of all parties involved, including themselves. We have long recognized such a distinction. *See In re Estate of Carey*, 194 Minn. 127, 142-43, 260 N.W. 320, 327 (1935).

In this case, Durand is "unable to manage property and business affairs because of an impairment in [her] ability to receive and evaluate information or make decisions." Minn. Stat. § 524.5-409, subd. 1(a). This impairment provides a genuine and substantial basis to justify a legislative distinction focused on protected persons' needs. Protected persons are more vulnerable to exploitation and need protection—they are called "protected persons" for a reason. So it is not surprising that elective share provisions limiting the rights of protected persons have survived rational basis review in other states. *See Sweeney v. Summers*, 571 P.2d 1067, 1070 (Colo. 1977); *In re Merkel*, 618 P.2d 872, 875 (Mont. 1980).

Second, an evident connection exists between the distinctive needs of protected persons and the court order required by the statute. Because protected persons such as Durand are unable to manage their financial affairs, the elective share statute requires a conservator to petition for judicial approval of an election. Minn. Stat. § 524.2-212. A surviving spouse may ordinarily rely on personal pecuniary considerations when deciding whether to elect against a will, and the decision may be based on anything, including sentiment, respect for the deceased spouse's wishes, or the financial well-being of the

11

deceased spouse's devisees. *See McElroy v. Taylor*, 977 S.W.2d 929, 932 (Ky. 1998) ("[W]hen the election is made within the time allowed and in the proper manner, it is wholly immaterial what reasons induced the devisee to make the election. Its validity cannot be inquired into.") (quoting *Harding's Adm'r v. Harding's Ex'r*, 130 S.W. 1098 (Ky. 1910)). But for protected persons, the Legislature rationally determined that a conservator, whose duty it is to manage the pecuniary affairs of a protected person, should not have the unilateral power to make a decision that should be based on both pecuniary and non-pecuniary interests. The Legislature rationally provided that the process should include judicial oversight by findings and an order.

Third, the purpose of the statute is one that the State can legitimately attempt to achieve. Because protected spouses may well lack the capacity to manage money, an election by an adequately supported protected spouse only serves to transfer assets from the decedent's devisees to the surviving spouse's heirs or devisees. Requiring a conservator to show that the election is necessary to provide adequate support thus rationally balances the deceased spouse's testamentary wishes with the surviving protected spouse's needs. We have long recognized that it is proper to balance such interests. *See State ex rel. Percy v. Hunt*, 88 Minn. 404, 410, 93 N.W. 314, 316 (1903) ("If . . . it is found that the effect of an election to waive the provisions of the will will be to divert property from the channel in which the testator intended it to go, and, if the diversion is not required by the wants and circumstances of the widow, the prayer of the bill cannot be granted.") (quoting *Penhallow v. Kimball*, 61 N.H. 596, 599 (1882)).

Thus, applying rational basis review, we hold that the distinction between protected and non-protected spouses in the elective share statute does not violate the Minnesota Constitution's guarantee of equal protection.

Affirmed.